**Thurman A. BASS, Plaintiff,**

v.

**CITY OF WILSON, Defendant.**

**No. 93–326–CIV–5–DE.**

United States District Court,
E.D. North Carolina,
Raleigh Division.

May 10, 1994.

Lynn Fontana, Abigale S. Fine, Fontana & Fine, Durham, NC, for plaintiff.

James P. Cauley, III, Susan K. Ellis, Rose, Rand, Orcutt & Cauley, P.A., Wilson, NC, for defendant.

## ORDER

DENSON, United States Magistrate Judge.

THIS CAUSE comes before the court on Defendant's Motion for Summary Judgment as to Plaintiff's age discrimination claims in Counts I and II of the Complaint. Plaintiff has responded to the motion and Defendant has filed a reply. Accordingly, this motion is ripe for disposition.

## I

In evaluating a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Summary judgment will be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. Pro. 56(c). *See Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979) ("summary judgment 'should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law' ") (quoting *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950)). The party opposing the motion for summary judgment "must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials." *Shaw v. Stroud,* 13 F.3d 791 (4th Cir.1994) (citing *Anderson, supra* ).

■ "In considering a motion for summary judgment in a discrimination case like this one, a trial court must take special care, because motive is often the crucial issue." *Douglas v. PHH Fleetamerica Corp.,* 832 F.Supp. 1002, 1008 (D.Md.1993) (citing *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1005 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987)). Nevertheless, the Fourth Circuit has stated that this "does not mean that summary judgment is never an appropriate vehicle for resolution [in employment discrimination cases]." *International Woodworkers of America, etc. v. Chesapeake Bay Plywood Corp.,* 659 F.2d 1259, 1272 (4th Cir.1981). *See also Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364–65 (4th Cir.1985).

However, although summary judgment may be appropriate in some discrimination cases, a number of federal courts have counselled against it. "In general, summary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent." *Thornbrough v. Columbus & G.R. Co.,* 760 F.2d 633, 640 (5th Cir.1985). *See also Buford v. Holladay,* 791 F.Supp. 635, 645 (S.D.Miss.1992) ("Because the ADEA is not easily susceptible of bright line rules of resolution, summary judgment is generally regarded as an 'inappropriate tool' for resolving age discrimination claims"); *Hillebrand v. M–Tron Industries, Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989) ("Summary judgments should seldom be used in cases alleging employment discrimination because of the special category in which Congress and the Supreme Court visualized these cases"); *Lowe v. Monrovia,* 775 F.2d 998, 1009 (9th Cir.1985) ("Once a prima facie case is established either by the introduction of actual evidence or reliance on the McDonnell Douglas presumption, summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits"); *Sweat v. Miller Brewing Co.,* 708 F.2d 655, 657 (11th Cir.1983) (" 'granting of summary judgment is especially questionable,' " in employment discrimination cases (quoting *Hayden v. First National Bank,* 595 F.2d 994, 997 (5th Cir.1979))); *McKenzie v. Sawyer,* 684 F.2d 62, 67 (D.C.Cir.1982) (factual disputes in most discrimination cases preclude summary judgment).

## II

Plaintiff filed his Complaint on May 27, 1993, alleging age discrimination under both the Age Discrimination in Employment Act (ADEA) and the North Carolina Equal Employment Practices Act (EEPA). Plaintiff contends that Defendant impermissibly decided not to offer the position of Parks Superintendent to Plaintiff because of his age.

In May of 1991, Defendant placed an advertisement in the Wilson Daily Times for the position of Parks Superintendent. In the advertisement, Defendant sought an individual "[t]o perform responsible, difficult, technical and administrative work, overseeing development and maintenance of City parks ..." The applicant needed "thorough knowledge of the selection and maintenance of various grasses for athletic, beauty, and/or landscaped areas; general knowledge of various pesticides, fertilizers and rates of application; some knowledge of basic horticultural practices; and considerable knowledge of maintenance of playgrounds, buildings, pools and equipment." The advertisement then stated that applicants should possess "[a]ny combination of education and experience equivalent to graduation from an accredited college or university with major work in parks administration or related field and considerable experience in parks operation and maintenance, including some supervisory experience."

On June 4, 1991, Plaintiff, who was 53 at the time, filed an application for this position. He believed that his past experiences and education fit the description in the advertisement. Plaintiff graduated from high school in 1956 and completed a correspondence course from the Lasalle Institute of Management. In 1965, Plaintiff began managing Wilson Ford Tractor and Implement Company. In 1969, he acquired this business and formed Wilson Ford Tractor, Inc. Due to the sluggish farm economy, Plaintiff closed Wilson Ford Tractor, Inc., in 1986 and sold out the inventory. During the seventeen years he owned and operated Wilson Ford Tractor, Plaintiff attended a number of seminars and classes designed to train him to work with municipalities in order to sell equipment to them and assist them in improving their operations. Plaintiff also attended seminars on safety and compliance with OSHA regulations and chemicals for use in plant disease and weed control. In addition, Plaintiff prepared financial statements each month for the company and became familiar with municipal purchasing and bid procedure through his dealings with the City of Wilson and other municipalities.

From 1979 to 1986, Plaintiff also worked as president and general manager of the Happy Valley Golf Course, as well as being a part owner in this business. The Happy Valley

Golf Course is a private country club with a golf course, swimming pool and playground. As president and general manager, Plaintiff supervised approximately twelve employees, including golf pros, grill and restaurant employees, grounds maintenance workers, and the bookkeeper. He also was responsible for membership, the maintenance of the pool, playground equipment, lakes, streams, grasses and trees, scheduling of functions and special events, and the preparation of the budget.

Based on the application and resume submitted by Plaintiff, he was selected, along with six other applicants, for an interview with Mike Webster, the outgoing Parks Superintendent. The interview took place on June 24, 1991. Plaintiff believed that the interview had gone very well and that Mr. Webster had seemed interested in hiring him. Mr. Webster's notes on his employment interview form rated Plaintiff's academic/technical training as "related," his special skills as "very good," and gave Plaintiff the highest rating in supervisory experience. In addition, Mr. Webster thought there was a "fair relationship between applicant's background and job requirement." Mr. Webster's written comments stated: "Has good knowledge of equipment. Has good technical knowledge of job. No educational experience (job history lately—sketchy)."

Plaintiff later received a letter dated July 24, 1991, stating that someone else had been hired for the job. In response to this letter, Plaintiff telephoned Mr. Webster on July 31, 1991, to ask him why he was not hired. According to Plaintiff, Mr. Webster told Plaintiff that he had a chance to hire a "boy from Fuquay–Varina who was a lot younger." Plaintiff states that he then asked Mr. Webster how young he was, and Mr. Webster replied "about thirty." Plaintiff contends that he was so shocked by this admission of age discrimination that he immediately wrote down a detailed description of the conversation, which is attached to Plaintiff's Memorandum in Opposition as Exhibit 4.

Mr. Webster's account of this conversation is quite different. He contends that Plaintiff called him and asked whether the city had made its decision. When Mr. Webster responded that someone else had been hired, Plaintiff asked about the qualifications of the successful applicant. Mr. Webster responded that the successful applicant had a degree in Parks and Recreation and was currently employed as the Parks Superintendent for the Town of Fuquay–Varina. Mr. Webster contends that Plaintiff then said "he's probably a younger man, too; isn't he, Mike? And I said, yeah."

The successful applicant, John Sugg, was 29 years of age at the time he was hired. He received his B.S. degree, with a major in "Recreation and Natural Resource Management," from East Carolina University in 1988, three years before he had applied for the position as Parks Superintendent. He attended college from 1980 through 1988. His grades at Eastern Carolina were below average, earning "F's" in four courses, "D's" in eight courses and "C's" in sixteen courses. He was also placed on academic probation twice as a result of his low grade point average. Mr. Sugg's related job experiences consisted of summer employment as a park attendant at William B. Umstead State Park, where he "kept park free of litter, kept bathhouses and restrooms clean, checked visitors in and out at the boathouse and gave nature hike," summer employment as a biological aide with the U.S. Army Corps of Engineers, participating in a "southern pine beetle study, quail/dove call counts, forest inventory, dam gate changes, lake level recording, controlled burns, timber thinning and wildlife food plot management," and two years of full-time employment as Parks Superintendent with the Town of Fuquay–Varina.

Mr. Webster's notes on the employment interview form rated Mr. Sugg's academic/technical training as "related," his special skills as "adequate," his background "very good; considerable related experience," and his supervisory experience in the highest category. His notes on the form read: "Degree in P & R—Parks Superintendent presently at Fuquay–Varina. Only has 3 people in whole Department at Fuquay–Varina. Knowledge about plants, trees, flowers, playground equipment somewhat limited."

## III

The Age Discrimination in Employment Act, 29 U.S.C. § 623, makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual ... because of such individual's age." In order to be successful in pursuing an age discrimination claim, an ADEA plaintiff must prove that, but for the defendant's discriminatory conduct, the employment decision would have been in the plaintiff's favor. *See Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 458 (4th Cir.1989); *EEOC v. Western Elec. Co.*, 713 F.2d 1011, 1014 (4th Cir.1983); *Douglas,* 832 F.Supp. at 1008. A plaintiff may sustain this burden through the introduction of direct evidence, such as statements by the employer that age was the reason for the unfavorable employment decision, or through proof of circumstances from which an inference of age discrimination may be drawn, such as those delineated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See Goldberg v. B. Green & Co.*, 836 F.2d 845, 847–48 (4th Cir. 1988) ("To meet his burden [on a summary judgment motion] under ordinary principles of proof, [Plaintiff] must produce direct evidence of a stated purpose to discriminate and/or circumstantial evidence of sufficient probative force to reflect a genuine issue of material fact").

Plaintiff maintains that the statement made by Mike Webster to Plaintiff on the telephone—that Plaintiff did not get the job because he had a chance to hire a "boy from Fuquay–Varina who was a lot younger"—constitutes direct evidence of age discrimination. Although there is a dispute as to whether Mr. Webster actually made this statement to Plaintiff, for the purposes of this motion the Court will take Plaintiff's version as the truth. *See Charbonnages de France,* 597 F.2d at 414 (on a summary judgment motion, the court must "assess the evidence as forecast in the documentary materials ... in the light most favorable to the party opposing the motion").

Consequently, the court finds that Plaintiff has met his burden of presenting direct evidence of intent to discriminate in the hiring process. The statement by Mr. Webster presents sufficient factual information from which a reasonable juror could conclude that Defendant relied on the impermissible factor of age in making his hiring decision. *See Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1434 (4th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986) (statement by manager that "Blue Bell doesn't want salesmen with good records anymore ... They want young men who can do the work for a lot less money," and other such statements, constituted "ample direct evidence of age discrimination"); *Lindsey v. American Cast Iron Pipe Co.*, 772 F.2d 799, 802 (11th Cir.1985) (plaintiff's testimony that the vice-president told him that the company wanted a younger person to fill the position, if believed, constituted "sufficient direct evidence to remove this case from the ambit of McDonnell Douglas"); *Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1557 (11th Cir.1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984) (statement by the company's decisionmaker that he would not hire Plaintiff to work in the washroom because if she were allowed in, all women would want to enter was sufficient direct evidence of illegal discrimination).

In cases where the plaintiff presents direct evidence of discrimination, the defendant faces a more demanding burden than that required under *McDonnell Douglas.*

> In the face of direct evidence of discriminatory motive the employer cannot escape liability merely by producing a plausible explanation for its conduct. Rather, ... to escape liability the employer will have to prove by preponderant evidence that either (1) it was not biased towards the plaintiff; or (2) that its actions toward the plaintiff were not affected by this bias.

*Yudovich v. Stone,* 839 F.Supp. 382, 390 (E.D.Va.1993). *See also Fields v. Clark University,* 817 F.2d 931, 937 (1st Cir.1987), *cert. denied,* —— U.S. ——, 113 S.Ct. 976, 122 L.Ed.2d 130 (1993) (if a plaintiff presents direct evidence of discrimination, the employer must show by a preponderance of the

evidence that "the same decision would have been made absent the discrimination"). In fact, the Ninth Circuit has observed that "when a plaintiff has established a prima facie inference of disparate treatment through direct or circumstantial evidence of discriminatory intent, he will necessarily have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision." *Williams v. Edward Apffels Coffee Co.*, 792 F.2d 1482, 1486 (9th Cir.1986) (citing *Lowe*, 775 F.2d at 1009).

Defendant has argued that John Sugg was chosen to fill the position of Parks Superintendent because he was the best qualified applicant. Defendant points to three factors which made Mr. Sugg more qualified than Plaintiff and the other applicants: (1) he had a four-year degree in Recreation and Natural Resource Management; (2) he worked for two years as Parks Superintendent for the Town of Fuquay–Varina; and (3) he had a "variety of previous job experiences in the Parks and Recreation field." Based on these facts, Defendant asserts that "there can be no legitimate dispute that Mr. Sugg was the better qualified applicant."

However, Plaintiff, in his response, attempts to cast doubt on each of the reasons advanced by Defendant. To the claim that Mr. Sugg was more qualified because he possessed a four-year degree in Recreation and Natural Resource Management, Plaintiff points out that it actually took Mr. Sugg eight years to complete this degree and that Mr. Sugg earned a very high percentage of F's, D's and C's in his course work, prompting the administration to place him on academic probation twice. With regard to the assertion that Mr. Sugg was more qualified because of his experience with the Town of Fuquay–Varina, Plaintiff argues that Mr. Sugg only supervised three individuals in his capacity as Parks Superintendent there, while the City of Wilson position would require supervision of thirty-three park employees. Finally, as to Mr. Sugg's "variety of previous experiences" in parks and recreation, Plaintiff argues that these were only temporary summer jobs, one participating in biology studies and one cleaning park facilities and leading nature hikes.

IV

Defendant has advanced a legitimate business reason for choosing Mr. Sugg over Plaintiff for the Parks Superintendent position which, if true, would defeat Plaintiff's claim of age discrimination. *See* 29 U.S.C. § 623(f)(1) (defense to ADEA action where employer's decision to hire a younger applicant "is based on reasonable factors other than age"). However, genuine issues of material fact, remain as to whether the reason presented by Defendant is merely a pretext for age discrimination. Plaintiff has offered both direct evidence of discriminatory intent on the part of Defendant and facts which create a genuine dispute regarding whether John Sugg was, in fact, more qualified for the position than Plaintiff.

Because Defendant's explanation is not only subjective, but also an after-the-fact articulation of intent, the issue of pretext turns on the credibility of the parties, and therefore, is not appropriate for resolution on summary judgment. *See Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 899 (3d Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). The true motives of an employer in making an employment decision are often difficult to discern and "without a searching inquiry into these motives, those [acting for impermissible motives] could easily mask their behavior behind a complex web of post hoc rationalizations." *Lowe*, 775 F.2d at 1009 (quoting *Peacock v. Duval*, 694 F.2d 644, 646 (9th Cir. 1982). Therefore, the determination of such questions of motive and intent should be left to the trier of fact for resolution. Accordingly, Defendant's Motion for Summary Judgment is DENIED.

SO ORDERED.