**Jacqueline E. DOUGLAS, Plaintiff,**

v.

**PHH FLEETAMERICA CORPORATION and PHH Corporation, Defendants.**

Civ. No. H–92–2871.

United States District Court,
D. Maryland.

Aug. 27, 1993.

---

Frank L. Kollman and Kollman & Sheehan, Baltimore, MD, for plaintiff.

Richard J. Hafets, Eric Paltell and Piper & Marbury, Baltimore, MD, for defendants.

### MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

Before the Court for a ruling in this civil action is defendants' motion for summary judgment. This action arises as a result of the termination of the employment of plaintiff Jacqueline E. Douglas, a 51 year old female. Prior to her discharge, Douglas was employed by defendant PHH FleetAmerica Corporation (hereinafter "FleetAmerica"). Defendant PHH Corporation is the parent corporation of defendant FleetAmerica.

Plaintiff alleges that defendants discriminated against her on the basis of her sex in violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (hereinafter "Title VII"), and on the basis of her age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. (hereinafter the "ADEA").

The Court has considered memoranda submitted both in support of and in opposition to the pending motion. In addition, the Court has reviewed numerous deposition excerpts, affidavits, and other documents submitted by both plaintiff and defendants. A hearing on the pending motion has been held in open court. For the reasons to be stated, the Court has concluded that defendants' motion for summary judgment must be granted.

### I

### Background

FleetAmerica is in the business of leasing fleets of automobiles to corporations and owns approximately 300,000 automobiles world-wide. An integral part of FleetAmerica's business is keeping track of and managing its inventory of automobiles, a function which depends in large part upon computer technology.

Douglas was hired by FleetAmerica in October of 1978. Her initial position was as a computer programmer in FleetAmerica's Information Systems Division (hereinafter the "IS Division"). Douglas gradually worked her way up through the hierarchy of the IS Division, and she attained her first management level position in 1984. Plaintiff's final promotion came in January of 1990, when she was promoted to be manager of the Database Administration Group and also manager of the Information Center of the IS Division.

Before 1991, plaintiff's performance evaluations indicated that FleetAmerica was satisfied with her performance. In particular, there is evidence in the record indicating that plaintiff's supervisors, including Rick Bolandz and Jim Prebil, considered plaintiff to have satisfactory administrative skills. She received a number of raises, and by 1991 was earning a salary of more than $73,500 per

year, plus annual bonuses of approximately $12,000 per year.

At the time of her discharge, plaintiff had two primary supervisory responsibilities. First, she managed the Information Center. Essentially, the Information Center, which was first established in 1984, acted as a liaison between FleetAmerica's mainframe computers and the end-users of the computers. The Information Center staff would write manuals for the use of the mainframe computers and would train and generally assist end-users in the use of the mainframe. Second, plaintiff managed the Database Administration Group. The Database Administration Group was responsible for designing data architecture, for maintaining database records, and for modeling data. Defendants contend, and plaintiff does not dispute, that supervision of the Database Administration Group required a higher level of technical expertise than did supervision of the Information Center.

In the late 1980's, FleetAmerica began to feel competitive pressure from General Electric Company (hereinafter "GE"). GE had acquired a number of FleetAmerica's smaller competitors, and had developed a new information systems network which was, according to defendants, more efficient than FleetAmerica's system. FleetAmerica began to lose market share to GE.

In 1990, FleetAmerica undertook an analysis of its operations to determine why it was losing market share to GE. Among the findings of this analysis was that FleetAmerica's computer technology was becoming outdated, and that the Database Administration Group needed a technological overhaul. Plaintiff does not dispute this finding. Indeed, plaintiff testified at her deposition that when she became manager of the Database Administration Group in 1990, it had been neglected for a number of years, and that she "had an opportunity to go in there and try to put some technology into it, some of the latest systems development methodology."

In order to be able to respond to growing competitive pressure from GE, FleetAmerica decided to restructure the IS Division. The first step in this direction was the hiring of Michael Oravec to be the Vice President of the IS Division. At the time of his hiring, Oravec was 54 years of age. Oravec was hired at the recommendation of Rick Bolandz, who was then the Acting Vice President of the IS Division. Bolandz has testified that he told Oravec that the overhaul of the IS Division needed to be completed within 24 months.

Sometime in early 1991, Oravec made two decisions concerning the reorganization of the IS Division. First, Oravec decided that the Information Center would be scaled down or eliminated by the end of 1991. Uncontradicted evidence in the record indicates that the Information Center has, in fact, been substantially scaled down. At the time of plaintiff's discharge, the Information Center had three full-time employees. Currently, the Information Center is staffed by a single employee who works only 18 hours per week. It is undisputed that this substantial reduction in the size of the Information Center staff resulted from increased use by FleetAmerica employees of personal computers and from a general increase in computer literacy on the part of FleetAmerica employees. These two new developments essentially eliminated the need for a large staff devoted to the use by FleetAmerica employees of FleetAmerica's mainframe computers.

The second decision made by Oravec was that he needed a highly qualified data and database administrator to manage the Database Administration Group. In particular, Oravec determined that the manager would need the technical competence to overhaul within 24 months the technical aspects of the Database Administration Group.

By April of 1991, Oravec had reached the conclusion that plaintiff was not qualified to manage the overhaul of the Database Administration Group. On April 17, 1991, Oravec completed a "performance appraisal" of plaintiff. This performance appraisal indicated general satisfaction with the work which plaintiff had completed during the previous year and with plaintiff's basic administrative skills. However, the performance appraisal disclosed Oravec's concern that plaintiff did not have the technical competence to institute the necessary changes in the Data-

base Administration Group. Oravec rated plaintiff's "current knowledge of information technology, including hardware, software, and techniques" as "inadequate." In the "performance summary" portion of the appraisal, Oravec stated:

> It is my belief that for DB [Database], especially, Jacqueline needs to attain a greater knowledge level in order to make the directional contributions which the job calls for ... The activities of the Database Administration Department were achieved according to objectives. *However, in FY92 the requirements for the job and group will be somewhat different* ... Planning for the future in DB, I am not sure that Jacqueline has the requisite knowledge level at this time. (emphasis in original)

In a portion of the appraisal titled "Recommended Improvement or Developmental Challenge in Current Job For the Year Ahead," Oravec wrote:

> I am not sure that Jacqueline is at the desired technical *awareness* level for the upcoming Data Base challenges. Thus, we need to explore her overall strengths and where they may fit in the future. (emphasis in original)

By way of the same performance appraisal, plaintiff was informed that Oravec would not recommend her for a salary increase for fiscal year 1992. The performance appraisal stated simply, "I recommend no salary increase at this time given [Douglas's] level and responsibilities—now and future." Two other IS Division managers, Al Jacobsen (age 53) and Bill Newby (age 42), also were denied salary increases. Both Jacobsen and Newby were also discharged as a part of the IS Division reorganization.

On July 19, 1991, plaintiff met with Oravec. At this meeting, Oravec informed plaintiff that FleetAmerica would be hiring a new manager for the Database Administration Group, and that the manager of the Information Center would, in the future, be a lower grade position. Oravec informed plaintiff that she should begin to explore other positions within FleetAmerica, both within and without the IS Division. Following the July 19, 1991 meeting, FleetAmerica made some attempts to find an alternative position for plaintiff. The parties dispute the extent of these attempts. In any event, these attempts were unsuccessful. On September 11, 1991, plaintiff was given formal notice of the termination of her employment with FleetAmerica.

In September of 1991, at approximately the same time that plaintiff was discharged, FleetAmerica hired Michael Belak, a 33 year old male, to manage the Database Administration Group. Belak's credentials were more favorable than those of plaintiff for the position in question. Plaintiff possessed merely an Associates' Degree in Business Administration from Essex Community College, a degree program which she did not complete until 1991. Plaintiff admittedly had not taken any computer-related courses as a part of her degree program since 1980. She had no experience in database administration other than her brief stint as manager of the Database Administration Group at FleetAmerica.

In contrast, Belak's educational background included a B.S. in Computer Information Science from Ohio State University and an M.B.A. in Information Systems Management from George Washington University. In addition, Belak had experience in database administration with both GE and IBM, and had worked extensively with the newer database systems which FleetAmerica was in the process of implementing. Furthermore, Belak had published articles and spoken at conferences on data management.

Plaintiff contends that the hiring of Belak was preceded by a number of procedural irregularities. First, plaintiff contends, and defendants do not dispute, that no written job description ever existed for the position for which Belak was hired. Plaintiff further contends that, although she repeatedly asked various people to describe the qualifications for the position, no description was ever forthcoming. However, Rita Ennis testified that the posting of written job descriptions was *not* a standard procedure at FleetAmerica. Plaintiff has not produced evidence to the contrary. Second, plaintiff contends that Laverna Boston, a Human Resources Manag-

er, was not adequately consulted about the reorganization. But Boston's supervisors were consulted. Both Ennis and Jim Prebil, who were Boston's supervisors, testified that they had been consulted concerning the termination of plaintiff's employment.

Plaintiff contends, by way of affidavit, that since her departure from FleetAmerica and the hiring of Belak, no real changes have actually been made in the Database Administration Group. But plaintiff has no personal knowledge concerning the operations of FleetAmerica after her employment was terminated. The basis for her assertion consists of discussions which plaintiff has allegedly had with current employees of the IS Division. However, a number of these employees admittedly have no personal knowledge of the activities of the Database Administration Group. Indeed, the only reliable and material evidence contained in the record here concerning current workings of the Database Administration Group—namely, the testimony of Belak and Oravec and an affidavit of Nancy Slemmer, who worked under Belak—all establish that there have in fact been significant changes in the Database Administration Group.

In opposing defendant's motion for summary judgment, plaintiff relies on certain statistical evidence. Prior to and at the time of plaintiff's discharge, two female supervisors reported directly to Oravec. Currently, no female supervisor reports to Oravec. No supervisors older than plaintiff report to Oravec, although Oravec himself is older than plaintiff. However, the record does not disclose how many supervisors over the age of 40 report to Oravec. Of 24 women who were employed by the IS Division in 1992, 15 have left or been transferred. But the record in this case does not disclose how many women are currently employed in the IS Division, nor how many men have left or been transferred since 1992.

Plaintiff alleges that two statements made to her constitute direct evidence of FleetAmerica's discriminatory intent. First, plaintiff alleges that Oravec stated to her that he preferred to "sit around with the guys." Oravec denies making this statement. Plaintiff further alleges that at her termination interview, which was attended by herself, Oravec, and a human resources manager named John Borchers, plaintiff accused Oravec of discrimination. When Oravec left the room, Borchers allegedly stated "you hit the nail on the head." Borchers denies making this statement.

## II

### Summary Judgment Principles

One of the purposes of Rule 56, F.R.Civ.P., is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and supported, to come forward with some minimal facts to show that a defendant may be liable under the claims alleged. See Rule 56(e). Moreover, " '[a] mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " Barwick v. Celotex Corp., 736 F.2d 946, 958–59 (4th Cir. 1984), (quoting Seago v. North Carolina Theatres, Inc., 42 F.R.D. 627, 640 (E.D.N.C. 1966), aff'd, 388 F.2d 987 (4th Cir.1967)). In the absence of such a minimal showing, a defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. As Judge Winter said in Bland v. Norfolk and Southern Railroad Company, 406 F.2d 863, 866 (4th Cir.1969):

> While a day in court may be a constitutional necessity when there are disputed questions of fact, the function of a motion for summary judgment is to smoke out if there is any case, i.e., any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition.

In two cases decided in 1986, the Supreme Court clarified and expanded the principles applicable to a trial court's consideration of a motion for summary judgment filed under Rule 56. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In Anderson, the Supreme Court held that the standard for granting a motion for sum-

mary judgment under Rule 56 is the same as that for granting a directed verdict under Rule 50, F.R.Civ.P., 477 U.S. at 250–51, 106 S.Ct. at 2511–12. The Court explained this standard as follows:

> [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;* there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. at 2512 (emphasis added).

In *Catrett,* the Court held that there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar material *negating* the opponent's claim." 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis in original). In reaching this result, the Court observed:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rule as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.P. 1; ... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2555.

█ In *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126 (4th Cir.1987), the Fourth Circuit discussed the Supreme Court's holdings in *Anderson* and *Catrett.* Judge Wilkinson emphasized in *Felty* that trial judges have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* at 1128 (quoting *Celotex, supra,* 477 U.S. at 323–24, 106 S.Ct. at 2553). In considering a motion for summary judgment in a discrimination case like this one, a trial court must take special care, because motive is often the crucial issue. *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1005 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). Nevertheless, disposition of a Title VII or an ADEA suit under Rule 56 is appropriate if the plaintiff cannot prevail as a matter of law. *Conkwright v. Westinghouse Elec. Corp.,* 739 F.Supp. 1006, 1013 (D.Md.1990), *aff'd,* 933 F.2d 231 (4th Cir.1991). Indeed, "one purpose of the allocation of burdens of proof and production in Title VII and ADEA actions is to help district courts to identify meritless suits and stop them short of full trial." *Id.* (citations omitted).

When these principles are applied to the facts of record here, this Court has concluded that defendants' motion for summary judgment must be granted.

### III

### *Discussion*

█ The legal standards to be applied to plaintiff's Title VII and ADEA claims are essentially identical. In order to prevail on either claim, plaintiff must prove that, but for defendants' discriminatory motive, plaintiff would not have been denied a salary increase or discharged. *Tuck v. Henkel Corp.,* 973 F.2d 371, 374 (4th Cir.1992); *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 458 (4th Cir.1989); *EEOC v. Western Elec. Co.,* 713 F.2d 1011, 1014 (4th Cir.1983). Plaintiff may meet this burden under ordinary principles of proof using direct or indirect evidence or, in the alternative, under the judicially created proof scheme established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and most recently reaffirmed in *St. Mary's Honor Center v. Hicks,* — U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See Goldberg v. B. Green & Co.,* 836 F.2d 845, 847 (4th Cir.1988).

First, it is clear from the record here that there is no genuine issue of material fact in this case under an "ordinary methods of proof" analysis. Many of the allegedly dis-

puted facts relied upon by plaintiff are not *material* facts. Plaintiff has produced neither direct nor indirect evidence of age or sex discrimination. On the contrary, the evidence establishes as a matter of law that no discriminatory motive on the part of FleetAmerica resulted in plaintiff's discharge. Thus, if plaintiff is to prevail in this case, she must employ the *McDonnell Douglas* rationale.

■ Under the *McDonnell Douglas* proof scheme, plaintiff must initially establish, by a preponderance of the evidence, a *prima facie* case of employment discrimination. In order to make out a *prima facie* case of sex or age discrimination, plaintiff must establish: (1) that she is a member of a protected class; (2) that she was discharged; (3) that at the time of her discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) that following her discharge, she was replaced by someone of comparable qualifications outside the protected class. *Tuck*, 973 F.2d at 375 (age discrimination); *Wileman v. Frank*, 979 F.2d 30, 33 n. 5 (4th Cir.1992) (sex discrimination). The establishment of a *prima facie* case eliminates the most common nondiscriminatory reasons for a discharge, namely, that plaintiff was not qualified for the job or that the job was no longer available. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

■ If plaintiff establishes a *prima facie* case, then defendants have the burden of articulating a legitimate, nondiscriminatory reason for terminating plaintiff's employment. *Tuck*, 973 F.2d at 375. The articulation of a legitimate, nondiscriminatory reason for plaintiff's discharge rebuts the inference of discrimination raised by the *prima facie* case. At that point, the ultimate burden shifts back to plaintiff to prove by a preponderance of the evidence that the proffered explanation was a pretext and that defendants intentionally discriminated against her on the basis of her sex or age. *Id. See also, Wileman*, 979 F.2d at 33 (identical proof scheme applies to claim of sex discrimination). For purposes of defeating defendants' motion for summary judgment, plaintiff must

therefore produce evidence from which a reasonable jury could infer that defendants' actions were based upon her sex or upon her age, or that defendants' proffered legitimate, nondiscriminatory reason for adverse employment action is a pretext for unlawful discrimination. *Tuck*, 973 F.2d at 375; *Wileman*, 979 F.2d at 33. *See, St. Mary's Honor Center*, —— U.S. at ——, 113 S.Ct. at 2751–52.

■ Applying these principles to the facts of record here, this Court finds and concludes that plaintiff has failed to establish a *prima facie* case of either age or sex discrimination. She has met the first two requirements by producing evidence establishing that she was a female in the protected age group and that she was discharged. However, plaintiff has not come forward with material evidence indicating that at the time of her discharge she was performing her job at a level which met her employer's legitimate expectations nor is there evidence that she was replaced by someone of comparable qualifications outside the protected group.

Although she was replaced by a younger male, the record establishes that at the time when she was replaced she did not have the technical competence to manage the Database Administration Group as it was being restructured by Oravec. It was management's judgment that her replacement had higher qualifications for the position, and evidence of record does not indicate that management's decision was a pretext for discriminatory action. The nature of the positions which plaintiff filled had changed drastically, and her employer had concluded that she was no longer technically qualified for the job.

■ Although plaintiff asserts that she in fact *was* qualified for the job, this dispute concerning relative qualifications is not relevant to the issue of age or sex discrimination unless plaintiff can show that her employer's position as to her relative qualifications was a pretext for discrimination. A court will not review an employer's decision to hire or fire an employee based on the employer's judgment as to the relative qualifications of the new and of the former employee. *Wileman*

*v. Frank,* 979 F.2d 30, 37–38 (4th Cir.1992); *Pfeifer v. Lever Bros. Co.,* 693 F.Supp. 358, 364 (D.Md.1987) *aff'd* 850 F.2d 689 (4th Cir. 1988) (noting how a "once qualified employee can become unqualified due to a changing business environment"). The self-perception of a plaintiff in an ADEA or Title VII suit as to his or her other qualifications is irrelevant; what matters is "the perception of the decision-maker." *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980); *Pfeifer,* 693 F.Supp. at 365. Accordingly, the Court concludes that plaintiff has failed to make out a *prima facie* case under either Title VII or the ADEA.

■ Even assuming, *arguendo,* that the Court were to find that plaintiff had made out a *prima facie* case on the present record, summary judgment in favor of the defendants would still be granted. Defendants have in this case articulated a legitimate nondiscriminatory reason for the termination of plaintiff's employment, and plaintiff has not presented material evidence which would raise a triable issue as to pretext.

■ In order to show that defendants' proffered reason for the termination of her employment was pretextual, plaintiff must produce evidence indicating that, as between plaintiff's sex and age and defendants' explanation, her sex or her age was the more likely reason for the dismissal. *Tuck,* 973 F.2d at 375. Alternatively, plaintiff may point to evidence in the record showing that defendants' explanation is "unworthy of credence." *Id.* When all the evidence of record here is examined in a light favorable to plaintiff, this Court concludes that plaintiff has not come forward with even minimal facts indicating that her sex or her age was a factor in the termination of her employment or that defendants' explanation cannot be believed. Evidence does not exist in this record indicating that "but for" defendants' discriminatory motive to discriminate against her, she would not have been discharged. *Western Elec. Co.,* 713 F.2d at 1014.

In opposing defendants' motion, plaintiff relies heavily on inferences she derives from certain statements made to her during the period of her employment. Plaintiff states that Oravec on one occasion said to her that he preferred to "sit around with the guys."

In addition, according to plaintiff, she accused Oravec of discrimination at her termination interview, and Borchers, another employee of FleetAmerica who was also present, later stated after Oravec left the room, "you hit the nail on the head."

These two statements hardly constitute material evidence upon which a reasonable jury could rely in finding that FleetAmerica intentionally discriminated against plaintiff on the basis of her sex or age. The innocuous statement by Oravec that he preferred to "sit around with the guys" is not evidence of an intention on his part to invidiously discriminate against an employee. More specifically, it does not indicate his intention to fire plaintiff because of her sex or age. Borchers' statement has even less relevance. Borchers was not involved in the decision to terminate plaintiff's employment, and Oravec was not even present when Borchers allegedly made the statement.

In the absence of other proof, statements of the sort relied upon by plaintiff do not create any genuine issue of material fact concerning whether a defendant engaged in unlawful discrimination. *Gagne v. Northwestern National Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989) (statement by supervisor that he "needed younger blood"); *Gray v. New England Telephone and Telegraph Co.,* 792 F.2d 251, 254–255 (1st Cir.1986) (statement by low level supervisor that employee had "outlived his usefulness"); *Martin v. Ryder Distribution Resources,* 811 F.Supp. 658, 661 (S.D.Fla.1992) (statement by chief operating officer that older executives were "good old boys" and "old-fashioned"). Moreover, the "statistical" evidence relied upon by plaintiff is vague and hardly material proof of invidious discrimination on the part of FleetAmerica. Accordingly, the Court concludes that plaintiff has failed to produce direct evidence of unlawful discrimination sufficient to defeat defendants' motion for summary judgment.

## IV

### Conclusion

In sum, plaintiff has neither established a *prima facie* case of sex or age discrimination,

nor has she produced any direct evidence of discrimination sufficient to create a genuine issue of material fact concerning whether defendants intentionally discriminated against her based upon her sex or age. Accordingly, for all of the reasons stated, defendants' motion for summary judgment will be granted.

An appropriate Order will be entered by the Court.