# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

FILED

November 25, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

ELLA FRANCES PRUETT, )
)
    Plaintiff/Appellant, )    Madison Chancery No. 50067
)
vs. )
)
WAL-MART STORES, INC., )    Appeal No. 02A01-9610-CH-00266
)
    Defendant/Appellee. )

APPEAL FROM THE CHANCERY COURT OF MADISON COUNTY
AT JACKSON, TENNESSEE

THE HONORABLE JOE C. MORRIS, CHANCELLOR

For the Plaintiff/Appellant:        For the Defendant/Appellee:

Hite McLean, Jr.               Charles H. Barnett, III
Memphis, Tennessee          Justin S. Gilbert
                        Jackson, Tennessee

**AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

OPINION

This is an employment discrimination case. The plaintiff, an employee of a department store, developed problems with her feet and was unable to stand or walk for long periods. She contends that the defendant store refused to assign her to a position answering the telephone, alleging discrimination on the basis of age and disability, as well as an intent to take away her medical insurance benefits. The trial court granted summary judgment to the employer. We affirm in part, reverse in part, and remand.

Plaintiff/Appellant Ella Frances Pruett ("Pruett") was hired by Defendant/Appellee Wal-Mart Stores, Inc. ("Wal-Mart") in 1985, at the age of 52. She was hired to work as a cashier. For several years she worked as either a cashier or a sales clerk. During some of this time period, she worked in the domestics department. In 1988, Pruett injured her foot. For several weeks she was assigned the job of answering the telephones. When she had recuperated she returned to her previous duties.

After Pruett returned to her regular duties, when Pruett worked in domestics, she worked under the supervision of George Hobson. Hobson felt Pruett was a very good employee. During this same time period, the department manager over domestics, Shirley Flake, complained repeatedly about Pruett to the store manager, John Hillis. During March, 1993, Hobson was out on an extended sick leave. His replacement during that time filed two written reprimands, termed "coaching records," regarding Pruett's negative attitude and other work problems. In late March, 1993, because of these problems, Pruett was transferred from domestics to the checkout area.

Meanwhile, Pruett once again developed foot problems. Eventually, in September 1993, Pruett underwent surgery to treat degenerative bone and joint disease in her foot. She was again assigned to answer the phones at the store during her recovery. After three weeks of answering the phones, Wal-Mart reassigned Pruett to her original position as cashier, which required her to stand for long periods. This exacerbated her foot problems, and Pruett left work for several months. In February, 1994, Pruett underwent another foot surgery. While recuperating from her second surgery, Pruett learned of Wal-Mart's plans to open a new store in the area in August of 1994. In May 1994, while still off work recuperating, she applied for a job answering phones at the new store. Pruett alleges that the store manager, John Hillis, promised her the job.

Pruett returned to work on June 27, 1994, and was assigned to answer the telephones.

Pruett's job performance in this position is in dispute. On July 1, 1994, Hillis made the decision to transfer Pruett from the telephone position.

Pruett was then assigned to a position hanging apparel in the stock room. Because of the stress to her feet, Pruett could only work in the stock room for four hours a day. In late July, Pruett obtained a doctor's note specifying she could only work while sitting, and Hillis informed her there were no such jobs available. In August, Pruett learned that she did not receive the telephone operator position in the new store. From August 1, 1994, until August 28, 1995, Pruett did not work. She collected social security disability payments during this time. After Pruett tendered Wal-Mart a letter of resignation, Wal-Mart offered Pruett a job at the new Supercenter at the cosmetics counter where she could use a stool to relieve the stress on her feet. This job did not exist at the old Wal-Mart store. The record indicates that Pruett has since continued her employment at Wal-Mart, though not in a position answering telephones.

Pruett filed this lawsuit on January 25, 1995, alleging violations of the federal Americans with Disabilities Act ("ADA"), the federal Age Discrimination in Employment Act ("ADEA"), the federal Employee Retirement Income and Security Act ("ERISA"), and the Tennessee Human Rights Act ("THRA"). Pruett alleged that Wal-Mart did not award her the job answering phones in the new store because of her age and/or her disability. Pruett claimed that Wal-Mart failed to accommodate her disability because it did not reassign her to the telephone position, a job that allowed her to sit while working. Pruett also asserted a third claim under ERISA: she maintained that Wal-Mart removed her from the job answering the phone, which she could perform eight hours a day, and put her in a job she could work only four hours a day, so that she would no longer be eligible for coverage under Wal-Mart's medical insurance plan. She asserted that Wal-Mart did this to avoid paying her future medical benefits.

Wal-Mart filed a motion for summary judgment, asserting that it had a legitimate, non-discriminatory reason for not assigning Pruett to a position answering telephones. In an affidavit submitted by Wal-Mart in support of its motion, store manager Hillis asserted that, in Pruett's employment history since 1985, some employees had difficulty getting along with her. Regarding Pruett's job performance answering telephones, Hillis stated that he had received complaints from others about Pruett "cutting them off." Hillis also stated that he had heard Pruett relay messages on the store's public address (PA) system, and asserted that:

2

. . . she was not tactful, she was impatient, and she was callous. For example, if a Wal-Mart associate did not answer her first call, Pruett would call again with a piercing tone that I believe did not project favorably on Wal-Mart's public image. I personally counseled Pruett several times about her tone and her brashness.

Hillis also indicated that Pruett's duties on the telephone included reference checks, and that Pruett asked inappropriate questions. Hillis noted that the telephone system at the new Supercenter was much more complex than that at the old store. He stated that, considering Pruett's problems on the smaller telephone system and his "perception of her inability to maintain an appropriate public demeanor," he did not assign Pruett to a telephone position at the new Supercenter. Hillis denied any discrimination.

In response to Wal-Mart's motion, Pruett filed several affidavits. Pruett filed the affidavit of Karen Crook, who stated that she had worked for approximately three years in the late 1980's in domestics as the department manager, and that Pruett had worked under her supervision. Crook stated that Pruett "was a good worker and had a good attitude. . . ." In addition, Pruett filed an affidavit from Sarah Scott, a Wal-Mart manager from approximately 1986-1988. She stated that Pruett always tried "to do her best," and was "nice and helpful and friendly" to customers. Pruett also filed an affidavit from George Hobson, assistant manager of the store until June 1993. Hobson stated that Pruett "was a very good employee." He acknowledged that the department manager over domestics, Shirley Flake, had complained to Hillis repeatedly about Pruett. Hobson noted that he did not agree with Flake's complaints. Hobson disputed Hillis' assertions in Hillis' deposition that Hobson had complained about Pruett. Hobson noted the "coaching records" issued to Pruett about her negative attitude and job performance by Hobson's replacement during an extended sick leave in March, 1993. Hobson indicated he did not agree with the coaching records.

Finally, Pruett submitted her own affidavit. In it, Pruett stated that, in May 1994, Hillis told her that she would be assigned a telephone position,[1] first at the old store and then at the new Supercenter when it opened. She recounted returning to work on June 27, 1994, and being assigned to answer the telephones. A few days later, on July 1, 1994, Hillis transferred Pruett away from the telephone position. Pruett stated that Hillis did not tell her at that time that her performance had

_____

[1]Pruett also submitted the affidavit of Patricia Dotson, who stated that her physician recommended that she not work in a job that required a lot of standing. On June 17, 1994, Dotson said that she asked Hollis about a job she could do while sitting. She said that Hillis told her that the only such job was the telephone position, and that he already had Pruett, Mary Morphis and Peggy West scheduled for it.

3

been unsatisfactory. In August, when she was told she would not be assigned a telephone position at the new Supercenter, Pruett stated that Hillis told her for the first time that he had "received complaints" about her performance in the telephone position at the old store. She denied receiving any counseling or warnings about her performance prior to then. She stated that other employees also had problems cutting people off on the telephone, and that any problems with that were not her fault. She stated that, only once several years earlier, she was counseled that her voice was too loud on the PA system. Pruett denied being rude or abrupt with anyone on the telephone, and asserted that she had never been told that her questions on reference checks were inappropriate.

After reviewing Wal-Mart's motion and Pruett's response, the trial court granted summary judgment in favor of Wal-Mart. It explained its reasoning:

> The Plaintiff, Ella Frances Pruett, has filed this lawsuit claiming discrimination and damages because she was not placed in a job at the new Wal-Mart Super Center in Jackson, Tennessee, answering the telephone. In order to prevail in this litigation, the Plaintiff must prove that she was not given the job that she desired because of her age, which is over fifty (50), her medical expenses associated with her feet, which is over $9,000, or because of the problem with her feet.

> The Plaintiff was not fired from her job, but is, in fact, still working at the Wal-Mart Super Center in a job other than answering the telephone. Her insurance benefits have not been terminated and are also in full effect.

> The reason given by Wal-Mart offices in their affidavits is that the decision to not place the plaintiff in the telephone answering position was a business one, and had nothing to do with age, disability, or medical bills. In her opposing affidavits, various employees have sworn that Ms. Pruett was a good employee, etc. Ms. Pruett, in her affidavit and deposition, theorizes that she thought it was because of age and her feet, but she had no proof that would corroborate her theory.

> The Court is of the opinion that there are no issues of material fact. The reason that she was not placed on the job was a business decision made by Wal-Mart that she was not the right person for that particular job, and not because she was prejudiced or discriminated against because of age or feet.

From this decision, Pruett now appeals.

On appeal, Pruett argues that summary judgment was improper in this case because she produced sufficient evidence to rebut the Defendant's alleged nondiscriminatory reason for its decision not to assign her to the telephone position.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03. The party requesting summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* at 210-11. Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26. (Tenn. 1995). Since only questions of law are involved, on appeal there is no presumption of correctness regarding a trial court's grant of summary judgment. *Id.*

The core allegation for Pruett's discrimination claims is that Wal-Mart discriminated against her by refusing to assign her to the telephone position. Pruett does not allege that she was fired; indeed, the record indicates that she continues to work for Wal-Mart. Therefore, her overall job performance in other positions, while relevant background, is not the core factual issue in this case. Rather, her qualifications for, and performance in, the telephone position must be the focus of the factual analysis.

In Hillis' affidavit in support of Wal-Mart's motion for summary judgment, Hillis asserts that Pruett's manner on the telephone was "not tactful, . . . impatient, and . . . callous." He criticized her "tone and . . . brashness" on the PA system, and stated that he had counseled her "several times" about these concerns. He also referred to inappropriate questions on reference checks and problems with cutting callers off.

To rebut, Pruett submitted the affidavits of Karen Crook and Sarah Scott, who testified that Pruett had been a good employee in domestics in the late 1980's. This may be relevant background, because Hillis indicates in his affidavit and his depositions that Pruett's problems on the telephones were consistent with complaints he'd received about her when she worked in other departments. However, Crook's and Scott's affidavits do not address Wal-Mart's core assertion, that is, that Pruett's performance in the telephone position was unacceptable.

Pruett also submitted the affidavit of George Hobson, who likewise asserts that Pruett was a good employee in the domestics department. Like Crook's and Scott's affidavits, this is relevant background but does not address Pruett's performance in the telephone position. Hobson also disputes Hillis' statements that Hillis had received complaints about Pruett from Hobson. This is relevant regarding Hillis' overall credibility, but again does not refute Wal-Mart's primary reason for its action, that Pruett's performance in the telephone position was not acceptable.

In her own affidavit, Pruett does not dispute problems "cutting off" callers, but asserts that unnamed others had similar problems and that the telephone system was the reason. She admits being told in years prior that her voice on the PA system was "too loud." She states that she was never counseled or warned regarding other problems, and that she was never told that her questions on reference checks were inappropriate. Finally, Pruett states that, "to her knowledge," she was never rude or abrupt with anyone on the telephone.

Therefore, at the focus of the issues in this case is Hillis' subjective assessment that Pruett was "not tactful, . . . impatient, and . . . callous," had a "piercing tone" on the PA system, had an unacceptable "tone and . . . brashness," and that he had counseled her about these concerns several times. Juxtaposed against this assessment is Pruett's assertion that she was never told of such problems and that, to her knowledge, she was never "rude" or "abrupt" with anyone on the telephone.

## FEDERAL AGE DISCRIMINATION

Pruett claims that she presented sufficient evidence to rebut Wal-Mart's claim that her poor performance while working the telephones justified management's decision to assign the job to someone else. The only relevant evidence that Pruett submits to directly refute Wal-Mart's assertion that she was not qualified for the telephone position is her own affidavit, in which she asserts that she was never rude or abrupt and states that she was never criticized for her performance on the phones and on the public address system until she was denied the permanent position.

In an employment discrimination action, the plaintiff must first present evidence to establish a *prima facie* case of discrimination. Once the plaintiff establishes a *prima facie* case, the burden of proof shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment decision. If the defendant meets the burden of production, the burden of proof shifts again to the plaintiff, who must present evidence

6

that the defendant employer's reason is pretextual or that the reason given for the decision is not believable or not the real reason for the decision. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207 (1981). At this point, "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994) *(citing Gaworski v. ITT Commercial Finance Corp.*, 17 F.3d 1104, 1109 (8th Cir. 1994)). The plaintiff may discredit the employer's explanation by showing that: (1) the proffered reasons had no basis in fact; (2) the proffered reasons did not actually motivate the employment decision; or (3) the proffered reasons were insufficient to motivate the employment decision. *Manzer*, 29 F.3d at 1084 (6th Cir. 1994) (quoting *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993)).

Prior to 1993, some courts held that a plaintiff "must do more than simply refute or cast doubt on the company's rationale for the adverse action. The plaintiff must *also* show a discriminatory animus based on age." *Manzer*, 29 F.2d at 1082 (quoting *Medina-Munoy v. R.J Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir. 1990)). *See, e.g., Woods v. Friction Materials, Inc.*, 30 F.3d 255, 260 (1st Cir. 1994) ("the plaintiff cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer"); *Manzer v. Diamond Shamrock*, 29 F.3d 1078 (6th Cir. 1994); *Kralman v. Illinois Department of Veterans' Affairs*, 23 F.3d 150 (7th Cir. 1994); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir. 1994) ("The mere submission of materials from a co-worker or supervisor indicating that an employee's performance is satisfactory . . . does not create a material issue of fact."); *LeBlanc v. Great American Insurance Co.*, 6 F.3d 836 (1st Cir. 1993); *Irvin v. Airco Carbide*, 837 F.2d 724 (6th Cir. 1987). This has been termed the "pretext plus" standard: in order to survive summary judgment, the employment discrimination plaintiff must show evidence of pretext, *plus* direct, indirect, or circumstantial evidence of discriminatory animus on the part of the employer. *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994) (citing *Medina-Munoz,* 896 at 9 and *Anderson*, 13 F.3d at 1123-24; *LeBlanc*, 6 F.3d at 842-43.

The appropriate standard was clarified by the United States Supreme Court in *St. Mary's Honor Center v. Hicks*, 509 U.S.502, 113 S. Ct. 2742, 2748-49, 125 L. Ed. 2d 407 (1993): "Even though . . . rejection of the defendant's proffered reasons is enough at law to *sustain* a finding of discrimination, *there must be a finding of discrimination*." *Id.* at 2749 n.4. Once the defendant articulates a legitimate, non-discriminatory reason for its decision, the ultimate burden then shifts back to the plaintiff. In order to defeat a motion for summary judgment, the plaintiff must produce evidence from which a jury could reasonably infer that the employer's actions were based on her protected characteristic, "or that defendants' proffered legitimate, nondiscriminatory reason for adverse employment action is a pretext for unlawful discrimination." *Douglas v. PHH Fleet America Corp.*, 832 F. Supp. 1002, 1009 (D. Md. 1993) (citing *St. Mary's Honor Center*). "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by age animus.'" *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 260 (1st Cir. 1994) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1117 (1st Cir. 1993)). Without adequate direct or circumstantial evidence of the employer's discriminatory animus, the plaintiff cannot avoid summary judgment. *Woods*, 30 F.2d at 260.

We must first determine whether Pruett has adequately rebutted Wal-Mart's articulation of a legitimate, non-discriminatory reason for its action. As noted above, the focus must be on whether Pruett was "qualified" for the telephone position, that is, whether her performance in that position from June 27 to July 1, 1994 was inadequate. Hills testified regarding his subjective impressions that Pruett's "tone" and "brashness" on the PA system were unacceptable, that she was "not tactful," "impatient" and "callous" on the telephone. He also noted that others complained to him of Pruett cutting them off. Wal-Mart did not present evidence of specific incidents; Hillis recounted primarily his subjective assessment of her performance.

The affidavits by others, such as George Hobson, do not rebut Hillis' assertions. The only evidence rebutting Hillis' testimony is Pruett's affidavit, asserting that she was not "rude" or "abrupt" to callers, that she was never counseled about problems with her performance. She did not dispute problems cutting off callers, but asserted that it was not her fault.

8

In employment discrimination actions, the plaintiff must come forward with material evidence that at the time she was removed from the position in question, she was performing the job in a manner which met the employer's legitimate expectations and that she was replaced by someone of comparable qualifications outside the protected group. *Douglas v. PHH FleetAmerica Corp.*, 832 F. Supp. 1002, 1009 (D. Md. 1993). The court will not review the employer's business judgment as to employees' relative qualifications. *Wileman v. Frank*, 979 F.2d 30, 37-38 (4th Cir. 1992). *See also Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 156 (7th Cir. 1994). "The self-perception of a plaintiff . . . as to . . . her other qualifications is irrelevant; what matters is 'the perception of the decision-maker.' " *Douglas*, 832 F. Supp. at 1010 (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)). In some situations, however, the plaintiff's own uncorroborated testimony, standing alone, may be sufficient to create a disputed issue of material fact. *Weldon v. Kraft*, 896 F.2d 793, 799 (3rd Cir. 1990).

In this case, Hillis asserts in part that his perception of Pruett's performance was based on complaints from others that Pruett had "cut them off" on the telephones. Pruett's affidavit on this issue is inadequate to rebut this assertion. Pruett does not dispute that she "cut off" callers but asserts in effect that it was "not her fault." This is insufficient to create a disputed issue of fact on this point. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir. 1994).

Hillis' other assertions, regarding Pruett's tone, brashness, lack of tact, impatience or callous manner, are not supported by examples of such behavior; the record contains only Hillis' subjective impressions. Pruett's affidavit, in effect, says "no, I wasn't."

In some instances, as where the employer cites specific incidents to support its subjective judgment, the plaintiff cannot admit the factual incidents and yet create a disputed issue of fact by merely disagreeing with the subjective conclusion drawn from the incidents. For example, in *Manzer*, the plaintiff was fired because he was "obnoxious and unreliable." *Manzer*, 29 F.3d at 1082. The plaintiff did not dispute the factual incidents, but instead asserted that the employer's explanations were "phony" and that his good performance evaluations belied the employer's conclusion that he was "obnoxious and unreliable." *Id.* at 1084-1085.

In this case, however, Hillis' subjective assessment is not supported by specific incidents, nor does he compare Pruett's qualifications with those employees assigned to the telephone positions. Under these circumstances, Pruett may create a disputed issue of material fact by

9

submitting her testimony denying such behavior. ***See Weldon v Kraft***, 896 F.2d at 800 ( [T]here is no rule of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case of discrimination that could withstand a summary judgment motion.") Therefore, Pruett's affidavit is barely sufficient to rebut Wal-Mart's asserted legitimate, non-discriminatory reason for its decision not to assign Pruett to the telephone position.

However, once we conclude that the plaintiff has submitted enough evidence to rebut the employer's articulated reason, we must examine the evidence "as a whole" to determine if it is "sufficient for a reasonable fact finder to infer that the employer's decision was motivated by age animus." ***Woods v. Friction Materials***, 30 F.3d at 260 (citing ***Goldman***, 985 F.2d at 1117). Although, for purposes of summary judgment, Wal-Mart has conceded that Pruett has established a prima face case of age discrimination, this does not remove our responsibility to examine whether overall the plaintiff has presented sufficient evidence. In this case, it is undisputed that Pruett was hired by Wal-Mart at age 51, well into the protected age category. Pruett has proffered no evidence of remarks indicating age bias or statistical evidence indicating a pattern of age-biased actions. Pruett herself submitted proof, from her testimony and the affidavit of Patricia Dotson, that Wal-Mart had scheduled her to work in the telephone position in June, 1994, at age 60. She was transferred only after she had performed in this position several days. Moreover, Pruett was not discharged, but merely not assigned to the telephone position, and the record indicates that she continues to be employed by Wal-Mart. There is no indication that Wal-Mart has sought to place Pruett in job positions in which she would not come in contact with the public, as where an employer seeks to project a "youthful" image to the public. The only evidence proffered by the plaintiff is the age difference between Pruett and the employees who were assigned to telephone positions. At the time she was transferred from the telephone position, Pruett was 60 years old. The employees in the telephone positions, Mary Morphis and Tiny Pittman, were 50 years old and 53 years old, respectively, both well into the protected age category.

Unlike race or gender, age is not "a discreet [sic] and immutable characteristic of an employee which separates the members of the protected group indelibly from persons outside the protected group. Rather, age is a continuum along which the distinctions between employees are often . . . relative. . . ." ***Goldstein v. Manhattan Industries, Inc.***, 758 F.2d 1435, 1442 (11th Cir.), *cert. denied* 474 U.S. 1005, 106 S. Ct. 525, 88 L. Ed. 2d 457 (1985). Therefore, a plaintiff's inability

to demonstrate that the job position was filled by someone under forty is not "an absolute bar to the establishment of a prima facie case." *Carter v. City of Miami*, 870 F.2d 578, 583 (11th Cir. 1989). However, the plaintiff cannot make out a prima facie case by showing that the job was filled by someone only "a mite" younger. *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988). The plaintiff must show that the worker who filled the position was "sufficiently younger in the context of his employment to permit an inference of age discrimination." *Id.*

This case presents a close question, whether the seven-year difference in age between Pruett and Pittman, taken alone, is sufficient evidence for a jury to reasonably infer age discrimination, given the undisputed surrounding circumstances, and assuming that the jury rejects Wal-Mart's asserted reason for its decision. In most cases involving a comparison between employees in the protected age category, where the difference in age is modest, the plaintiff survives summary judgment in part because there is other evidence of age animus, such as biased remarks or a pattern of discriminatory behavior. *See, e.g., Bienkowski*, 851 F.2d at 1506-7 (five-year age difference plus mildly age-biased comments plus specific denial of incidents forming the basis for the employer's decision); *Carter v. City of Miami*, 870 F.2d at 579-80 (four-year age difference plus age-biased remark); *Goldstein*, 758 F.2d at 1440 (several employees replaced by younger workers, with an age difference of 5-10 years, showed a pattern of discrimination). At least one court has found that a modest age difference, in and of itself, is sufficient to permit the fact finder to infer age discrimination. *See, e.g., Sempier v. Johnson & Higgins*, 46 F.3d 724, 729-730 (3rd Cir. 1995) (plaintiff's job responsibilities assumed by two employees, one four years younger and the other ten years younger). In another court, a ten-year age difference, without further evidence, was deemed insufficient to survive a motion for summary judgment. *See O'Connor v. Consolidated Coin Caterers Corp.*, 829 F. Supp. 155, 158-59 (W.D.N.C. 1993) (ten-year age difference, alleged biased remarks had no nexus to the decision to terminate plaintiff).

Viewing the evidence as a whole, in the light most favorable to the plaintiff, we must conclude that the evidence is not sufficient for the fact finder to reasonably infer that Wal-Mart's

11

decision not to assign Pruett to the telephone position resulted from age animus. The decision of the trial court on Pruett's age discrimination claim is affirmed. *Manzer*, *supra*, at 1083.

## FEDERAL DISABILITY CLAIMS

Pruett claims that she was discriminated against because of her disability when Wal-Mart refused to transfer her to the telephone operator position. This claim involves two theories: (1) disability discrimination, i.e., Pruett was not given the job because of Wal-Mart's discriminatory animus; and (2) failure to accommodate; that Pruett was denied an accommodation, a sedentary job, which the federal disability statutes required Wal-Mart to provide.

The analysis for Pruett's claim under the ADA of discrimination on the basis of her disability is very similar to the analysis of her age discrimination claim. *See Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 762 (5th Cir. 1996). Pruett must establish a prima facie case by producing evidence that:

> 1) he is an individual with a disability; 2) he is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and 3) he [suffered adverse employment action] solely by reason of his handicap.

*Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996) (citing cases). Where the employer's discriminatory intent is disputed, courts have applied "a burden-shifting analysis roughly equivalent to that set forth by the Supreme Court in *McDonnell Douglas*"for other employment discrimination claims. *Monette*, at 1178. Once Pruett establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Rizzo*, 4 F.3d at 761. The plaintiff must then produce evidence from which a jury could reasonably infer that the employer's actions were based on her disability, or that the employer's articulated reason is a pretext for unlawful discrimination. *See id.*

As discussed above in the context of Pruett's age claim, Pruett has submitted evidence barely sufficient to rebut Wal-Mart's asserted legitimate non-discriminatory reason for its actions. Consequently, as with Pruett's claim of age discrimination, we must examine whether " 'the evidence as a whole . . . [is] sufficient for a reasonable factfinder to infer that the employer's decision was motivated by . . . animus" on the basis of her disability.' " *Woods*, 30 F.3d at 260 (quoting *Goldman*, 985 F.2d at 1117).

12

In this case, the plaintiff has no direct evidence of discriminatory animus on the basis of Pruett's disability. The only circumstantial evidence appears to be that the other employees in telephone positions did not have disabilities. However, Pruett's own proof indicates that one of the employees in a telephone position, Tiny Pittman, had a physical disability.[2] Moreover, it is undisputed that, when Pruett previously experienced foot problems, she was transferred temporarily to a telephone position and, on June 27, 1994, it is undisputed that Pruett was assigned to the telephone position because of her foot disability. Under the circumstances as a whole, the evidence is simply insufficient for a jury to reasonably conclude that Wal-Mart then turned around and removed Pruett from the telephone position because of her foot disability.

Therefore, the trial court did not err in granting Wal-Mart summary judgment on Pruett's claim of discrimination on the basis of her disability under the ADA.

Under Pruett's second theory, an employer is guilty of discrimination under the Americans With Disabilities Act when it has not made "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the business of such [employer]." 42 U.S.C.A. §12112(b)(5)(A) (1995). Pruett is classified as an "individual with a disability"[3] because her physical inability to stand for long periods of time has substantially limited her ability to perform her job at her previous position of sales clerk. "Reasonable accommodation" may include reassigning the handicapped employee to a vacant position. 42 U.S.C.A. § 12111(9)(B) (1995). However, the ADA does not require an employer to search for another job the employee can perform. *Miller v. Department of Corrections*, 916 F. Supp. 863, 870 (C.D. Ill. 1996). In these cases, the employee bears the burden of "producing evidence sufficient to establish that accommodation by reassignment was possible." *Id.*

In July 1994, Pruett's physician informed Wal-Mart that she needed to be reassigned to a position that allowed her to sit while working. Wal-Mart was required to make a good faith effort to accommodate Pruett's disability unless it could show that such accommodation would create an

---

[2]Pruett asserts that Pittman sought an accommodation from Wal-Mart, to transfer from the telephone position to a less sedentary position, and that Wal-Mart failed to accommodate her.

[3]" The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8) (1995).

undue hardship. 42 U.S.C.A. §12112(b)(5)(A) (1995).[4] It was not required to transfer Pruett to a sedentary position if there were no vacancies or if Pruett was not qualified for a particular sedentary position.

After being informed of Pruett's disability, Hillis offered her a position hanging apparel in the stockroom with the accommodation of a stool. This position required standing, however, and Pruett could not perform the job. She then requested the telephone position. Pruett testified, that after Hillis informed her that she would not receive the job answering phones, she told him that she would appreciate his informing her if any other sitting position became available. In his affidavit, Hillis states that "[a]lthough Pruett was not offered the telephone position, she was offered several alternative jobs and a part time work schedule that would not affect her foot problems. Pruett refused these jobs and work schedules because she claimed she could make more money by receiving short term disability." Hillis did not identify any other job, aside from the stockroom position, that he offered Pruett. Pruett alleges that after she was refused the telephone position, she was not offered another sitting position until one year later, and, that she would have accepted any sedentary position had one been offered. From August 1, 1994, until August 28, 1995, Pruett did not work for Wal-Mart. During this time she received Social Security disability benefits.

On August 12, 1995, Pruett submitted a letter of resignation stating, in pertinent part:

I am not aware of any positions at Wal-Mart that I am presently capable of performing, with the exception of the job of answering the telephone. . . . [B]ecause I am in financial straits at this time . . ., I am compelled to resign my employment in order to receive what is due me under Wal-Mart's profit sharing plan.

After receiving this letter, Wal-Mart offered Pruett a sitting position as cashier in the cosmetics department, a position which allowed her to work while sitting. Pruett's evidence indicated that this position had not existed at the old Wal-Mart store. The cosmetics position reasonably accommodated Pruett's disability. She accepted the position and returned to work on August 28, 1995.

Thus, the record establishes that disputed issues of material fact remain as to Pruett's claim that Wal-Mart failed to accommodate her disability. These issues include Pruett's qualifications for the telephone position (i.e., whether she performed adequately in the position form June 27, 1994

---

[4]"[U]ndue hardship,' means an action requiring significant difficulty or expense . . . ." 42 U.S.C.A. § 12111(10) (1995).

14

to July 1, 1994), whether Wal-Mart had vacant positions for which Pruett was qualified that would have accommodated her, whether these positions were offered to Pruett, whether Pruett refused them and, if so, whether Pruett was justified in refusing them.

Regardless of these factual issues, Wal-Mart argues that the doctrine of judicial estoppel should bar Pruett from claiming that she was "otherwise qualified" for a position under the ADA. Wal-Mart bases this claim on Pruett's sworn statement submitted to receive Social Security disability benefits. It argues that Pruett cannot claim on one hand to be totally disabled[5] in order to receive disability benefits, and on the other hand assert that Wal-Mart failed to assign her to a sedentary job that she could perform. However, Wal-Mart points to no place in the record in which it raised this issue before the trial court. Consequently, it will not be considered on appeal. *Indemnity Ins. Co. v. Blackwell*, 653 S.W.2d 262 (Tenn. App. 1983).

Therefore, Wal-Mart is not entitled to summary judgment on Pruett's claim of failure to accommodate her disability. As to this claim, the decision of the trial court must be reversed and the case remanded for trial.

## THRA CLAIMS

The Tennessee Human Rights Act (THRA) prohibits age and handicap discrimination in employment. *See* Tenn. Code Ann. §§ 8-50-103(a) (1993) and 4-21-401(a) (1991). Tennessee utilizes federal decisions construing parallel employment law to determine the standard by which Tennessee courts will weigh the evidence in these types of cases. *Bruce v. Western Auto Supply Co.*, 669 S.W.2d 95 (Tenn. App. 1984). In age discrimination actions, THRA sections and their federal counterparts are similarly interpreted. Accordingly, the standards mentioned above apply, and we find that Pruett's claim for age discrimination under state law was properly disposed of by the trial court.

Unlike its federal counterpart, the portion of the THRA that prohibits discrimination on the basis of disability does not require employers to provide disabled workers with reasonable accommodations.[6] *See Tuck v. HCA Health Services of Tennessee, Inc.*, 7 F.3d 465, 474 (6th Cir.

---

[5]Pruett testified in her deposition that she is only disabled "to stand or walk." She asserted that she could perform a sedentary job, and that she informed the Social Security Administration of this. Under these circumstances, her prior statement would not contradict her assertions here.

[6]Tenn. Code Ann. § 8-50-103(a) provides in pertinent part:

1993); *Turner v. Eagle Distributing Co.*, No. 03A01-9209-CH-0338, 1993 WL 88365, at \*2 (Tenn. App. March 29, 1993) (holding that Tennessee law does not require an employer to accommodate a handicapped employee by reassignment); *Abraham v. Cumberland-Swan, Inc.*, No. 01A01-9201CH00032, 1992 WL 207775 (Tenn. App. Aug. 28, 1992); Tenn. Atty. Gen. Op. No. 94-028. Therefore, Pruett has no claim for failure to accommodate her disability under Tennessee law. The trial court's decision as to Pruett's THRA claims is therefore affirmed.

## ERISA CLAIM

Pruett claims that Wal-Mart violated § 510 of ERISA when it denied her a job which she could perform full-time. The relevant ERISA section provides in pertinent part:

> It shall be unlawful for any person to discharge, fire, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . .

29 U.S.C.A. § 1140 (1997). A section 510 violation involves three elements: (1) plaintiff participated in a protected plan; (2) the defendant engaged in prohibited action (3) "for the purpose of interfering with the plaintiff's receipt of benefits under the plan. . . ." *See Watkins v. Shared Hospital Services Corp.*, 852 F. Supp. 640, 643 (M.D. Tenn. 1994). As a result of Wal-Mart's actions, Pruett lost her medical benefits for approximately one year.

Pruett asserts that Wal-Mart intentionally reassigned her from the job answering telephones to a position that required her to stand constantly, therefore limiting the amount of hours she could work each day. Because Wal-Mart's medical insurance plan covered only those employees who worked twenty-eight (28) hours or more per week, Pruett's transfer resulted in her loss of benefits under the plan.

To state a claim under ERISA, the plaintiff must show specific intent to violate the statute. *See Watkins*, 852 F. Supp. at 643; *Folz v. Marriott Corp.*, 594 F. Supp. 1007, 1014 (W.D. Mo.

---

There shall be no discrimination in the hiring, firing and other terms and conditions of employment of the state of Tennessee or any department, agency, institution or political subdivision of the state, or of any private employer, against any applicant for employment based solely upon any physical, mental or visual handicap of the applicant, unless such handicap to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved.

16

1984). Pruett can point to no discriminatory remarks or pattern of behavior by Wal-Mart or other evidence indicating such intent. Accordingly, we find that the trial court was correct in granting summary judgment for Wal-Mart on this claim.

**CONCLUSION**

In sum, Pruett has presented evidence barely sufficient to rebut Wal-Mart's articulated legitimate nondiscriminatory reason for refusing to assign her to the telephone position. However, the evidence as a whole on Pruett's age discrimination claim is insufficient for a jury to reasonably infer that Wal-Mart's actions were the result of age bias. Therefore, the trial court's dismissal of Pruett's age discrimination claim, under the federal and state statutes, is affirmed. Likewise, the evidence as a whole on Pruett's claim of disability discrimination is insufficient for a jury to reasonably infer that Wal-Mart's decision resulted from bias against her because of her foot disability. Consequently, the trial court's dismissal of Pruett's disability discrimination claim, under both federal and state statutes, is affirmed. However, on Pruett's claim that Wal-Mart failed to make a good faith effort to accommodate her disability, under the ADA, disputed issues of material fact remain. The trial court's dismissal of Pruett's failure-to-accommodate claim is reversed and the cause remanded for trial on this claim. On Pruett's claim under ERISA that Wal-Mart refused to assign her to the telephone position in order to avoid paying her medical benefits, the evidence as a whole is insufficient for a jury to reasonably find that Wal-Mart had the requisite specific intent. Therefore, the trial court's dismissal of Pruett's ERISA claim is affirmed.

The decision of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this Opinion. Costs are taxed equally to Appellant and Appellee, for which execution may issue if necessary.

_____

**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____

**W. FRANK CRAWFORD, P. J., W.S.**

_____

**DAVID R. FARMER, J.**

17
