**Dorothy A. WILEMAN,
Plaintiff–Appellee,**

v.

**Anthony M. FRANK, Postmaster
General, Defendant–
Appellant.**

**No. 91–1179.**

United States Court of Appeals,
Fourth Circuit.

Argued April 6, 1992.

Decided Oct. 26, 1992.

As Amended Nov. 9, 1992.

David George Karro, Office of Labor Law, U.S. Postal Service, Washington, D.C., argued (Suzanne H. Milton, Office of Labor Law, U.S. Postal Service, Richard D. Bennett, U.S. Atty., Juliet A. Eurich, Asst. U.S. Atty., Baltimore, Md., Stephen E. Alpern, Associate Gen. Counsel, Brian M. Reimer, Office of Labor Law, U.S. Postal Service, Washington, D.C., on the brief), for defendant-appellant.

Francis Raymond Laws, Venable, Baetjer & Howard, Bel Air, Md., argued (Joseph F. Snee, Jr., Venable, Baetjer & Howard, on the brief), for plaintiff-appellee.

Before WIDENER and LUTTIG, Circuit Judges, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

LUTTIG, Circuit Judge:

The United States District Court for the District of Maryland, following a bench trial, found that the United States Postal Service had impermissibly denied appellee Mrs. Dorothy Wileman a promotion to the position of Manager, Commercial Accounts because of her sex. The Postmaster General appeals that judgment arguing that the district court erred in finding discriminatory intent. We agree and therefore reverse.

### I.

Appellee, Mrs. Dorothy Wileman, is a white female who has worked for the United States Postal Service since 1966. App. at 55. In 1981, appellee became a Custom-

er Service Representative (CSR), an EAS–15 level position,[1] in the Baltimore Sectional Center. *Id.* at 55–56. As a CSR, appellee was one of several individuals responsible for selling postal services to commercial clients of the Postal Service and servicing the accounts of customers after sales had been made. *Id.* at 56, 971.

Mr. Charles Coger, a black male, was a level 18 Senior CSR in the Baltimore office. *Id.* at 972. He assumed the position of acting Supervisor of CSRs in the Baltimore office in January 1985. *Id.* at 453. In June 1985, appellee became a level 18 Senior CSR, still under the supervision of Mr. Coger. *Id.* at 56. In August 1985, the level 19 position of Supervisor of CSRs was opened for competitive selection, and Mr. Coger and appellee applied. *Id.* Mr. Gary Doyle, the Director of the Customer Services Department, was the selecting officer, and he chose appellee for the position. *Id.* at 744, 901.[2]

In mid–1986, as part of a nationwide Postal Service reorganization, appellee's new position was abolished. *Id.* at 57–58. Two new level 20 positions were created—Manager, Commercial Accounts and Manager, Technical Sales and Services—which reported to Mr. Stanley Dederer, the Director of the Marketing and Communications Department of the Baltimore division. *Id.* at 58. The Manager, Commercial Accounts—the position at issue here—was to manage the Baltimore division commercial sales force and supervise the division account management activities. *Id.* at 987–

88. In July 1986, appellee, Mr. Coger, Mr. William Wilderson (a white male), and others applied for the two new positions. *Id.* at 1014, 1105. After interviewing the candidates, Dederer selected Coger as Manager, Technical Sales and Service and Wilderson as Manager, Commercial Accounts. *Id.* at 1035. At the time of their selection, Wilderson was a level 18 marketing analyst at the Postal Service headquarters in Washington, *id.* at 59, 973, and Coger was still a level 18 Senior CSR in Baltimore, *id.* at 972.

After Dederer made these selections, he was ordered by the Postal Service regional management to place a Mr. John Kimball in the position of Manager, Technical Sales and Service because Kimball was a level 22 employee whose position had been abolished in the Postal Service reorganization. *Id.* at 585–86.[3] At this point Dederer decided that the remaining position—Manager, Commercial Accounts—should be filled by an individual already from the Baltimore office in order to promote employee morale in Baltimore. *Id.* at 164, 613. This decision eliminated Wilderson from further consideration. *Id.* Dederer then selected Coger over appellee for the promotion to Manager, Commercial Accounts. *Id.* at 164.

After pursuing administrative remedies, *see id.* at 61, appellee brought this action in the United States District Court for the District of Maryland alleging both race and sex discrimination in violation of 42 U.S.C. § 2000e–16(a).[4] After a full trial, the dis-

---

1. The EAS levels are job grades assigned by the Postal Service to various positions based upon the duties and responsibilities of the positions. App. at 972.

2. Mr. Coger had applied for the position of Supervisor of CSRs in 1984 and had been rejected. App. at 743–44. Following his rejection, he brought an administrative complaint alleging racial discrimination, and in September 1985 he brought a class action suit in federal district court. *Id.* at 770–71, 1068. After appellee was selected in 1986, Coger again brought an administrative complaint alleging racial discrimination and retaliation for his previous complaint. *Id.* at 1202.

In this action, appellee alleged racial discrimination in the 1986 selection of Coger for the position of Manager, Commercial Accounts on

the theory that he received the promotion in settlement of these prior claims. The district court found this claim to be without merit, *id.* at 62–65, and its judgment on that issue is not before us on appeal.

3. Under Postal Service policy, an employee whose position has been abolished is to receive noncompetitive first consideration for any position at or up to six grades below his current grade level. App. at 586, 611–12, 979–80.

4. Section 2000e–16(a) in relevant part provides:

All personnel actions affecting employees or applicants for employment ... in the United States Postal Service ... shall be made free from any discrimination based on race, color, religion, sex, or national origin.

trict court found that appellee had failed to make out a claim of race discrimination but that she had proven impermissible sex discrimination. *See id.* at 55–75. On appeal, the Postmaster General challenges the latter finding as clearly erroneous.

## II.

### A.

█ Under the Supreme Court's established precedents for evaluating disparate treatment claims under Title VII, a plaintiff bears the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989). To satisfy this requirement a plaintiff must raise an inference that the defendant acted with discriminatory intent, *Moore v. City of Charlotte,* 754 F.2d 1100, 1105 (4th Cir.), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985), by eliminating the most common nondiscriminatory reasons for the plaintiff's rejection, *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *see also Moore,* 754 F.2d at 1105.[5]

If a plaintiff meets this burden, the defendant must then articulate a legitimate, nondiscriminatory reason for the plaintiff's rejection or the employer's preference for some other applicant. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Green,* 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant is able to advance a legitimate, nondiscriminatory reason for the action complained of, the plaintiff must carry his "ultimate burden of persuading the court that [he] has been the victim of intentional discrimination." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. The plaintiff may meet this burden "either directly by persuading the

court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.; see also Green,* 411 U.S. at 804–05, 93 S.Ct. at 1825. Appellee proceeded below by offering evidence that the Postal Service's asserted justifications for selecting Coger over appellee were not credible.

The district court found that appellee had made out a prima facie case of sex discrimination as to her twice being denied the promotion to Manager, Commercial Accounts. App. at 67. The court then analyzed appellant's proffered reasons for promoting first Wilderson and then Coger instead of appellee and agreed with appellee that these reasons were not credible and were merely pretexts for impermissible sex discrimination. *Id.* at 71.

### B.

In justifying its promotion of Wilderson and Coger, appellant relied primarily upon the testimony of Dederer, the selecting official. Dederer testified that he preferred Wilderson over appellee in large part because Wilderson 1) performed better at the interview by evidencing greater knowledge of the job at issue and by evincing a more effective management style, 2) had superior account management experience and knowledge, and 3) possessed a degree in business administration and marketing.

Dederer stated that

[Wilderson's] knowledge of the job was far superior to anyone else, in my estimation. He was able to ... give me total, complete answers, more so than anybody else. He was able to better explain all the elements of the account management process.

He also had experience in teaching the account management program across the

---

42 U.S.C. § 2000e–16(a).

**5.** The Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), set forth the most common method of establishing a prima facie case of discrimination, stating that a plaintiff may show "(i) that he belongs to a [protected] minority; (ii) that he applied and was qualified for a job

for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications." 411 U.S. at 802, 93 S.Ct. at 1824.

country to a number of sales force individuals. He has a Bachelor's degree in business administration, with a major in marketing, which was a plus.

And he voiced to me the—all of the elements that I wanted and expected of anybody in that job. And he seemed to be the type of individual that would get the most out of his people.·

App. at 547. Dederer also noted that Wilderson's experience as one of the leaders of a task force within the marketing department responsible for developing the account management training programs for CSRs throughout the country made Wilderson more qualified "than anybody else in the country that was eligible to apply for" the ·Manager, Commercial Accounts position. *Id.* at 548–50. Wilderson also had participated in the Postal Service reorganization and had played a role in defining the job requirements of the very position at issue here. *Id.* at 552–53. Additionally, Dederer testified that he had personally worked with Wilderson at the Washington headquarters and that prior to relocating to headquarters, Wilderson had worked for four years in Baltimore as a CSR and had received excellent performance appraisals. *Id.* at 68. Dederer also explained that one of Wilderson's main assets was his degree in business administration and marketing. *Id.* at 551. Finally, Dederer claimed that appellee's evaluations on her application were not as strong as Wilderson's. *Id.* at 68–69; *see also id.* at 438–39. *Compare id.* at 1013 (Wilderson's recommendations) *with id.* at 997 (appellee's recommendations).

Dederer testified similarly that he found Coger to be better qualified than appellee primarily because of his responses to questions at the interview, his educational background, and his knowledge of account management. *Id.* at 443. First, based upon the interview, Dederer determined that Coger would have a more participatory management style, whereas appellee stressed a more authoritarian and disciplinarian style of management. *Id.* at 444–45. .Second, Coger had an undergraduate degree and was studying for a masters in business administration, while appellee had not yet

received a college degree. *Id.* at 618–19. Dederer did note that appellee had taken thirty-seven credits in business administration at two community colleges over a period of ten years, but he concluded that "[s]omebody that's accumulated 37 credits over a ten-year period does not appear to be comparable in any way to somebody that already has a degree, and [has] even surpassed a Bachelor's degree and is on [his] way toward an M.B.A. degree." *Id.* at 619. Third, Dederer testified that he found the answers given by Coger at the interview concerning account management to be more complete than those given by appellee. *Id.* at 69, 623.

Dederer also testified that his decisions not to promote appellee were based in part on his negative personal experiences supervising her. He noted that customer profiles prepared under appellee's supervision were not kept current, *id.* at 559–60, 675–76, that appellee was not prepared for a sales call at the Social Security Administration, *id.* at 560–62, and that the sales. calls of the Baltimore CSRs were highly deficient under appellee's supervision, *id.* at 624–25; *see also id.* at 69.

### C.

The district court concluded that these reasons advanced by appellant, through Dederer, were "unworthy of credence and that sex discrimination [therefore] prompted the selection of Wilderson and Coger over Wileman." *Id.* at 70. This finding of discriminatory intent is a finding of fact which ·we review for clear error. *Pullman–Standard v. Swint,* 456 U.S. 273, 285–90, 102 S.Ct. 1781, 1788–91, 72 L.Ed.2d 66 (1982); *Moore,* 754 F.2d at 1104. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). We have previously elaborated ùpon "the ways in which an appellate court may properly be 'convinced' that a 'mistake' in fact-finding has been made"

in the context of reviewing motivational findings in Title VII litigation:

> [T]he conviction of mistake may properly be based upon a conclusion that, without regard to what the "actual" facts may be, the findings under review were induced by an erroneous view of the controlling legal standard, or are not supported by substantial evidence, or were made without properly taking into account substantial evidence to the contrary or are against the clear weight of the evidence considered as a whole. In sum, these establish that *"clearly erroneous" review is properly focused upon fact-finding processes rather than directly upon fact-finding results.* The appellate function is to insure that the process shall have been principled; the function is not authoritatively to find the "facts" first instance, or to affirm or deny that the facts "found" by the trial court are the "actual" facts of the case.

*Miller v. Mercy Hosp., Inc.*, 720 F.2d 356, 361 (4th Cir.1983) (citations omitted) (emphasis added), *cert. denied*, 470 U.S. 1083, 105 S.Ct. 1841, 85 L.Ed.2d 141 (1985).

 We are firmly convinced after a thorough review of the district court's reasoning in light of the evidence adduced at trial that the district court in this case did err in finding discriminatory intent on behalf of the Postal Service. It is readily apparent that the court's seriatim rejection of each of the Service's justifications for choosing either Coger or Wilderson over appellee rested either upon a misunderstanding of the applicable law or upon manifestly faulty logic.[6]

The court first rejected "the entirety" of Dederer's criticisms of appellee's performance because in a September 3, 1986, merit performance evaluation, he had rated appellee's performance as "Very Good." *Id.* at 71, 1096. The court concluded that "Dederer's praise for Wileman contained in the evaluation clearly indicates that the criticisms of her work proffered as justification for her non-selection were established *post hoc* and were merely pretextual." *Id.* at 71.

The "Very Good" rating is not, however, a perfect rating; it recognizes the need for improvement and that there are shortcomings in the employee's performance. *Id.* at 1096. Thus, the fact that Dederer rated appellee "Very Good" does not suggest, much less confirm, as the district court concluded, that later criticism of appellee's performance such as that by Dederer was motivated by a discriminatory design.[7] The district court's reliance on this performance evaluation as proof of pretext plainly constituted error.

Second, the district court remarked that "neither Coger [nor] Wilderson had supervisory jobs at the time of their selections," whereas appellee had been the Supervisor of CSRs for ten months before the competition at issue here. *Id.* at 72. Additionally, the court noted, appellee was a level 19 employee at the time of the competition, while Wilderson and Coger were only level 18 employees. *Id.* at 73.

As a matter of fact, Coger had held, on an acting basis, the very position occupied by appellee for the seven months prior to her appointment. *Id.* at 72. Thus, appellee and Coger had similar supervisory experi-

---

**6.** The court failed even to address a number of the justifications proffered by Dederer for preferring Wilderson and Coger over appellee. In particular, the court neglected to consider Dederer's testimony about his interviews with the candidates. He testified that he chose Coger and Wilderson in part because both men provided more complete answers to his questions regarding account management and both voiced a more participatory management style—a style preferred by Dederer. Additionally, the court failed to consider Dederer's testimony that he preferred Wilderson because of Wilderson's extensive experience in account management training and his role in designing the very posi-

tion at issue here. The court's failure even to consider these proffered justifications constitutes error. *Cf. Hayes v. Invesco, Inc.*, 907 F.2d 853, 858 (8th Cir.1990) (district court's finding of pretext was clearly erroneous because it "failed to consider ... important evidence").

**7.** The absence of discriminatory intent is further evidenced by the fact that appellee herself had rated Coger's work as "Very Good" in a performance evaluation conducted in the summer of 1986, during the pendency of this selection process. *Id.* at 931.

ence. As to Wilderson, Dederer could reasonably conclude that Wilderson's significant experience in account management training program development and his role in creating the very position at issue here compensated for his relative lack of actual supervisory experience. Appellee's allegedly "superior" supervisory experience could not, therefore, serve as a proper basis for the district court's conclusion that Dederer's stated legitimate justifications for preferring Wilderson and Coger were mere pretexts for impermissible sex discrimination.

Third, the court supported its decision with the fact that the Postal Service, in defending against Coger's earlier discrimination claim, *see supra* note 2, had argued that appellee was better qualified for the position of Supervisor of CSRs than Coger, even though Coger had been Acting Supervisor of CSRs for seven months. *Id.* at 72. The district court found the Postal Service's claim some ten months later, after appellee had performed successfully in the position of Supervisor of CSRs, that Coger was more qualified than appellee to be "inconsistent and untenable." *Id.*

It is true that in defending against Coger's earlier claim, Doyle, the officer who had rejected Coger for the position at that time, stated that he preferred appellee over Coger. *Id.* at 747. But Doyle had stated at the time that, although he preferred appellee, Coger was qualified for the Supervisor of CSRs position. *Id.* at 751. He also testified that he had based his decision on the evaluations of appellee and Coger conducted by their manager at the time, Mr. John Kimball. *Id.* at 750–51. Kimball admitted that although he recommended appellee to Dederer for the Manager, Commercial Accounts position, he would not have been troubled if Coger had been selected and he would have had to supervise Coger's work. *Id.* at 733.

It is clear from the record that appellee, Wilderson, and Coger are all highly qualified, dedicated Postal Service employees. The selection of either appellee or Coger first for the Supervisor of CSRs position and then for the Manager, Commercial Ac-

counts position necessarily was based in part upon subjective judgments about the candidates formed from personal interaction of the candidates with the selecting officer who would have to supervise the candidate chosen. In such circumstances, the mere fact that Doyle preferred appellee over Coger for the Supervisor of CSRs position, even though both were considered qualified for the job, does not establish that the choice of the other of the two qualified candidates by a different selecting official ten months later for a different position was discriminatorily motivated. As appellant correctly notes, "it does not follow that if two selecting officials disagree over the relative merits of two qualified applicants, one must be lying." Appellants' Br. at 24. Nor does it follow that such disagreements are to be resolved in appellee's favor, for appellee bore the burden of proving intentional discrimination. *Cf. Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 529 (11th Cir.1983) (finding clear error and cautioning that the district court "may not circumvent the intent requirement of the plaintiff's ultimate burden of persuasion by couching its conclusion in terms of pretext; a simple finding that the defendant did not rely on its preferred reason, without a further finding that the defendant relied instead on [sex], will not suffice to establish Title VII liability."). The district court's finding of pretext on the basis of the Postal Service's response to Coger's earlier claim is thus ill-founded.

Fourth, the district court noted that appellee was an "affected" employee because her position had been abolished as part of the Postal Service reorganization. The court found that Postal Service policy encouraged the promotion of affected employees where the affected employee's qualifications were equal to those of others competing for positions. It then concluded that because appellee "had superior qualifications for the position of Manager, Commercial Accounts," the awarding of the position first to Wilderson and then to Coger violated the express Postal Service policy encouraging appellee's promotion. *Id.* at 73.

As the court correctly explained, Postal Service policy at most *encouraged* the promotion of affected employees; it did not require a preference for affected employees as in the case of lateral moves or demotions. *See supra* note 3; App. at 978–79. With regard to the promotion of affected employees, the Postal Service policy states that "[i]f all other factors are equal, we certainly do not have any objection to giving priority consideration ... to affected employees, but the paramount principle is that promotion is a competitive process and the person who best meets the position requirements is selected." *Id.* at 1016. This policy is, on its face, entirely permissive and entails a predicate determination that the applicants are equally qualified. The district court concluded that appellee was better qualified for the position than Wilderson and Coger. *Id.* at 73. For the reasons stated herein, however, it is apparent that Dederer reasonably could have concluded that Wilderson and Coger were better qualified than appellee for this position and that the district court's finding to the contrary is without support in the record. Therefore, appellee's affected employee status should not, under Postal Service policy, have been a relevant factor in the selection process, and the district court's reliance on that status in finding pretext is error.[8]

Finally, the district court found Dederer's selection of Wilderson and Coger because of their superior educational qualifications to be pretextual. The court noted that the position of Manager, Commercial Accounts required only a "[c]ollege level understanding of business administration, marketing, or a related field," *id.* at 988, and concluded that "[b]ecause Wileman clearly met the educational qualifications for the position, *any* justification offered by the [Postal Service] as to education or lack thereof as being a factor justifying Wileman's non-selection clearly appears to be pretextual." *Id.* at 74 (emphasis added).

The court, in effect, held that consideration of educational differences above and beyond the minimum requirements for the position was *per se* pretextual, given that appellee met the minimum educational requirements.

■ The district court's reasoning as to the Postal Service's proffered explanation simply is without support in the law. When two applicants meet the minimum educational qualifications of a position, Title VII does not prevent an employer from preferring the applicant who has educational qualifications which surpass the minimum requirements of the position. *Cf. Danzl v. North St. Paul–Maplewood–Oakdale Indep.Sch.Dist. No. 622,* 706 F.2d 813 (8th Cir.1983) (reversing district court's finding of pretext and warning that "[t]he district court cannot substitute its judgment for the employer's by saying that [the plaintiff's] advanced degree compensates for [the selected applicant's] superior experience."). Dederer's decision to prefer Wilderson, who had a completed Bachelor of Science degree in business administration and marketing, over appellee, who had thirty-seven credits in business administration classes taken over a ten year period from two different community colleges, is entirely reasonable and cannot support a finding of discrimination in this case. Dederer's preference for Coger, who had a completed Bachelor's degree in education and was working towards an M.B.A., is similarly rational and in no way probative of discriminatory intent. In concluding to the contrary, the district court again erroneously assumed that consideration of those differences could only be pretextual.

■ We are, in this case as always, reluctant to reverse a district court's findings, especially as to motivation and intent. These are peculiarly findings to which appellate courts must accord the utmost deference. Not even these findings, however, are beyond appellate review. *See*

---

8. Indeed, the district court appears to have misunderstood the relevant inquiry. Rather than finding that the Postal Service did not in fact believe that Wilderson and Coger were better qualified than appellee, the district court "leapt

directly from its interpretation of the polic[y] to a conclusion of intentional discrimination." *See Clark,* 717 F.2d at 528. This reasoning effectively "reduced the question of relative qualifications to one of irrelevance." *See id.*

**38**

Anderson v. Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985) (district court may not "insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness.... Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination."); *Lilly v. Harris–Teeter Supermarket*, 842 F.2d 1496, 1505 (4th Cir.1988) (reversing district court's finding of pretext as clearly erroneous). In the unusual case where the district court proceeds on an erroneous assumption as to applicable law, or where its reasoning from the evidence adduced is so flawed as to constitute clear error, we, as a court of appeals, have a responsibility to correct that error. We believe that this is such a case. The district court's conclusion that the Postal Service discriminated against appellee did not rest so much upon the kind of credibility determinations as to which we accord virtual finality; it rested upon affirmative misapprehensions as to the law and upon reasoning that is not supported by logic.

While this court may disagree with the Postal Service's determination that Wilderson and Coger were the superior candidates for the position of Manager, Commercial Accounts, we simply cannot conclude, based upon the record, that the Postal Service's proffered justifications for preferring Wilderson and Coger over appellee were so unworthy of credence as to support a finding of discriminatory intent. *See Burdine*, 450 U.S. at 259, 101 S.Ct. at 1097 ("[T]he employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability...."); *see also Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989) ("We have no authority simply to require employers to use the 'best' standards and procedures available to them."). What was true in the similar case of *Miller v. Mercy*

*Hosp., Inc.* is equally true here: "Assessed according to legal standards of rationality in drawing inferences of motivation from raw historical facts in evidence and under controlling burdens of proof, the ultimate finding of discriminatory motivation ... must be rejected as clearly erroneous." 720 F.2d at 369–70. The judgment of the district court is, accordingly, reversed.

REVERSED.