**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LISA H. HADROSEK,
Plaintiff-Appellant,

v.

No. 96-2453

PAGING NETWORK, INCORPORATED;
PAGING NETWORK OF WASHINGTON,
INCORPORATED,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-95-1741-AW)

Argued: March 2, 1998

Decided: June 26, 1998

Before HAMILTON, Circuit Judge, BUTZNER,
Senior Circuit Judge, and MOON, United States District Judge for
the Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Moon wrote the opinion, in
which Judge Hamilton and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Richard Albert Simpson, ROSS, DIXON & MASBACK,
L.L.P., Washington, D.C., for Appellant. Paul Joseph Lambert,
BINGHAM, DANA & GOULD, L.L.P., Washington, D.C., for

Appellees. **ON BRIEF:** Lisa A. Burns, ROSS, DIXON & MAS-BACK, L.L.P., Washington, D.C., for Appellant. Teresa Burke, Gerard P. Finn, BINGHAM, DANA & GOULD, L.L.P., Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

MOON, District Judge:

Lisa H. Hadrosek ("Hadrosek") seeks reversal of the district court's grant of summary judgment in favor of the appellees Paging Network, Inc. ("Pagenet"), and its subsidiary Paging Network of Washington ("Pagenet-D.C."). Hadrosek asserts that an unresolved issue of material fact existed concerning her sex discrimination and sexual harassment claims against the appellees.

I. BACKGROUND

In January 1994, Pagenet-D.C. hired Hadrosek to work as a Customer Care Manager in its College Park, Maryland office. Nancy Broudy ("Broudy"), sales manager, Donald Tynes ("Tynes"), human resource manager, and Mark Thielen ("Thielen"), general manager and vice-president, interviewed Hadrosek and made the decision to hire her. J.A. at 58. The following month, Broudy gave Hadrosek a memorandum directing her to focus on improvements in patience and sensitivity, discipline of employees, communication, commitment of time, and interviewing skills. Broudy and Thielen assert that this was a negative rating. Id. at 40, 327. Sixty days after Hadrosek began work, she and Broudy met and discussed what the district court described as "persisting problems" with Hadrosek's performance: her poor relations with her co-workers, her poor attitude toward customers, her lack of discipline and organizational skills, and her unwillingness to work overtime. Id. at 258-59. Although Pagenet-D.C. made no

2

formal evaluation at that time and took no formal action, Hadrosek acknowledged some of the principal problems alleged and assured her supervisors that her performance would improve. Id. at 364.

Hadrosek's immediate superiors saw no improvement in her work. Broudy and Thielen considered the "call abandon rate," the percentage of customer service calls that are abandoned by customers after the initial connection, an important index of customer satisfaction. They considered an acceptable call abandon rate to be between 3% and 5%. Id. at 326, 370. Hadrosek's call abandon rate, however, was 13.8%, 11.9%, and 11.7% for July, August, and September 1994, respectively. Appellee's Br. at 12. This is one of the aspects of Hadrosek's performance that most troubled Broudy and Thielen. Id. Additionally, in September, several of Hadrosek's co-workers reported that she was incompetent and difficult to work with. J.A. at 390-91.

Hadrosek received a number of positive comments on her work from Pagenet headquarters in Texas. Id. at 420-21. Nevertheless, e-mail messages indicate that her local supervisors who worked most closely with her remained dissatisfied. Id. at 328-63. In July, Pagenet-D.C. management reprimanded her, and she offered to step down as customer service manager. Id. at 317. Later, several of the Customer Service Representatives ("CSRs") that Hadrosek managed complained to her supervisors about her management of the department, and Broudy finally recommended that Hadrosek's employment be terminated. Id. at 297, 322.

Based on these complaints and the problems that preceded them, Broudy, Thielen, and Tyne, the same individuals who had hired Hadrosek, decided to fire her. Id. at 61. On September 27, they did so without following the three-step process described in the employee handbook. Id. at 424. Instead, she was escorted straight from Pagenet-D.C.'s building and was only allowed to return after her e-mail and voice mail had been checked by her superiors. Id. Pagenet-D.C. showed that this alternate means of firing employees had been used with at least one other male employee and that the three-step process had been used to terminate female employees. Id. at 323, 372-73.

3

On June 12, 1995, Hadrosek instituted this suit, claiming that in contravention of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq., she was fired because of her sex; that Pagenet-D.C. maintained a sexually oppressive work environment in its College Park office; and that the appellees were guilty of the tort of intentional infliction of emotional distress.*

The district court determined that no issue of material fact existed and granted appellees' motion for summary judgment.

## II. DISCUSSION

A grant of summary judgment is subject to de novo review. Foster v. American Home Products Corp., 29 F.3d 165, 168 (4th Cir. 1994). Viewing the facts in the light most favorable to the party that opposed the motion for summary judgment, this court must reverse the motion if there is an unresolved issue of material fact and judgment cannot be made as a matter of law. Helm v. Western Maryland Railway Co., 838 F.2d 729, 734 (4th Cir. 1988). While the court views the facts and inferences of the case in the light most favorable to the party opposing the motion for summary judgment, the mere existence of evidence is not enough to defeat the motion. To defeat a motion for summary judgment, a party must present evidence of specific facts from which the finder of fact could reasonably find for him or her. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

### A. Sex Discrimination

Forty-two U.S.C. § 2000e-2(a) states, in pertinent part, "It shall be an unlawful employment practice for an employer- (1) . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a). The appellant may prevail if she can show that the adverse employment decision would not have been made but

_____

*Because Hadrosek did not appeal the district court's grant of summary judgment disposing of her claim for intentional infliction of emotional distress, we do not address that issue.

4

for her sex. <u>McDonald v. Sante Fe Trail Transportation Co.</u>, 427 U.S. 273, 282 n.10 (1976).

Hadrosek argues that under the burden shifting analysis of <u>McDonnell Douglas Corporation v. Green</u>, 411 U.S. 792, 802-04 (1973), and <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981), she made a <u>prima facie</u> case of discrimination which was not rebutted by the appellees. Under this analysis, a plaintiff must first raise an inference of sex discrimination by satisfying the elements of a <u>prima facie</u> case: She must show that (1) she is a member of a protected class; (2) she was performing the job satisfactorily; (3) she was discharged or constructively discharged; and (4) she was replaced by someone with comparable qualifications outside the protected class. <u>Id.</u>

If a plaintiff succeeds in carrying her <u>prima facie</u> burden, she raises an inference of discrimination. A defendant may then attempt to rebut that inference with evidence of a nondiscriminatory and legitimate reason for its actions. <u>Texas Department of Community Affairs</u>, 450 U.S. at 253. Upon such a showing, the presumption against the defendant would fall. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506-07 (1993). The plaintiff's burden then would be to show that the defendant's rationale for its actions mask discrimination, and that the defendant intentionally discriminated against her on the basis of sex. <u>Wileman v. Frank</u>, 979 F.2d 30, 33 (4th Cir. 1992).

1.

Viewing the evidence in the light most favorable to Hadrosek, her claim does not pass the second prong of the <u>McDonnell Douglas</u> <u>prima facie</u> requirements--she has not shown that she performed her job to the satisfaction of her employer. The compliments from supervisors who did not work at Hadrosek's office do not overcome the ongoing complaints from her immediate supervisors and her CSRs. J.A. at 136, 139. The compliments Hadrosek seeks to use to establish her proficiency are few, and the complaints are many. The compliments are of a more general nature and sporadic, while the complaints and requests for improvement are specific and persistent. The complaints were part of an ongoing and periodic critique of her job performance.

Hadrosek asserts that her performance was good. It is the perceptions of an employee's supervisors, however, that matter in determining whether the employee is performing her job satisfactorily. <u>Smith v. Flax</u>, 618 F.2d 1062, 1067 (4th Cir. 1980). Based on months of Broudy's and Thielen's statements and writings concerning her acts and omissions which led to her termination, no finder of fact could reasonably conclude that Hadrosek performed her job to her supervisors' satisfaction.

2.

Hadrosek argues that the reasons offered for her termination are pretextual. She argues that Pagenet-D.C.'s expectations were unreasonable with regard to the low call abandon rate goal. Even if an employer's expectations are unreasonable, however, it does not necessarily follow that the expectations mask discrimination. To further support her claim of pretext, she offers that the process of her termination departed from standard procedure. Evidence shows that the procedure for termination was not standardized. <u>Id.</u> at 295, 323, 372-73. An employee guidebook offered a three-step termination process, but the process described was optional and not binding upon the company. In practice, a male employee had been dismissed in the same way that Hadrosek was dismissed, and some female employees had been dismissed through the three-step process. <u>Id.</u> The termination process varied without regard to sex, so the discrepancies between Hadrosek's termination process and that outlined in the employee guidebook are insufficient to support Hadrosek's claim.

In cases in which the same person hired and fired a plaintiff, the court must give weight to the "powerful inference" that discrimination did not motivate the termination. <u>Jiminez v. Mary Washington College</u>, 57 F.3d 369, 378 (4th Cir. 1995). Broudy, Thielen, and Tynes hired Hadrosek in January 1994. J.A. at 58, 314. Less than a year later, Broudy, Thielen, and Tynes met with Hadrosek and terminated her employment with Pagenet-D.C. Broudy, who originally interviewed Hadrosek, prepared the three-page memo that listed the reasons for her termination. <u>Id.</u> at 322.

Thus, even if Hadrosek had made out a <u>prima facie</u> case of discrimination or established the reason for firing her was pretextual, her

6

evidence would not support a finding of discrimination. Id. From the litany of negative comments, it is clear that Hadrosek was not living up to the expectations of her superiors. Pagenet-D.C. had a nondiscriminatory, legitimate reason for Hadrosek's discharge: her job performance was unsatisfactory. Considering the evidence as a whole, in the light most favorable to Hadrosek, no finder of fact could reasonably decide in her favor. Hadrosek failed to establish the central second prong of the McDonnell Douglas analysis. Because her evidence of sex discrimination did not meet that threshold test, it was not sufficient to shift the burden to her employer.

B. Sexual Harassment

Hadrosek claimed sexual harassment in a sexually hostile work environment. In order to prove hostile work environment, a plaintiff must show that (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) based upon sex; (4) which was sufficiently severe and pervasive to create an abusive work environment; and (5) there is a basis for imputing liability to the employer. Swentek v. U.S. Air, Inc., 830 F.2d 552, 557 (4th Cir. 1987).

Hadrosek can prove only the first of the five prongs. She has not demonstrated that she was subject to unwelcome sexual harassment based upon her sex as required by Swentek's second prong. See id. She never made a complaint of sexual harassment to her supervisors, except that she reported to Broudy an incident of a sales manager "leering" at two female CSRs and asking them out on a date. Broudy filed a memorandum of the incident in the sales managers file. Pagenet-D.C. fired the sales manager a few days later, though it probably did so for poor job performance rather than sexual harassment. J.A. at 249-54. In any event, the conduct was not repeated. Hadrosek also alleges that she overheard, or heard of, crude sexual innuendos in conversations at work.

In order to show a hostile work environment, the environment must have been abusive both objectively and subjectively. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993). Hadrosek could not have been subjectively abused by remarks or actions she did not know of during the term of her employment. She heard few of the comments

7

personally, and she admits she learned of many of the incidents only after her employment terminated. Id. at 143-52, 195-99, 214, 281-83, 374, 413-14, 416. Of the verbal comments and gestures Hadrosek allegedly did hear and see, her superior or co-worker directed few toward her. These include a claim that at a baseball game, Thielen chastised her for leaving early and stated that she should "let [her] husband know who wears the pants in the family." J.A. at 15. She also recalls Thielen once telling her that she looked like she had a hard night and should put on makeup. Id. at 416. Other comments were directed to a number of people. Hadrosek alleges she was present at a meeting where employees were directed to make a presentation concerning something that cost less than a dollar. One employee chose to make a presentation on the worth of a condom. Id. at 414. She also recalls overhearing male employees' and a male manager's crude comments regarding their estimation of various women's attractiveness. She complains that some employees were given priority in the allocation of business equipment, though she eventually obtained the equipment as well.

Even if these incidents occurred on the basis of sex, as required by the third prong, they do not meet the fourth requirement: that the incidences be sufficiently severe and pervasive so as to create an abusive work environment. See Swentek, 830 F.2d at 557. The sporadic comments and actions of which Hadrosek was aware at the time of her employment do not constitute Title VII sexual harassment.

The final prong of Swentek requires a basis for imputing liability to the employer. Id. Even if some of the incidents Hadrosek observed constituted sexual harassment, Hadrosek had a managerial duty to report these to her superiors. Hadrosek reported to her supervisors only the one incident regarding the sales manager asking her female CSRs out on dates. Management took prompt action, and the behavior did not recur. J.A. at 415. She failed to report to her supervisors the incidents that she now alleges were directed toward her. An employer will only be held liable for sexual harassment if it knew or should have known of the harassment and failed to take prompt action. See Swentek, 830 F.2d at 558. Hadrosek's own inaction concerning other incidents undercut her employer's ability to remedy any problems.

8

III. CONCLUSION

Considering the evidence as a whole and in the light most favorable to Hadrosek, the evidence is insufficient to support her claim of sex discrimination or sexual harassment. We affirm the summary judgment entered by the district court in favor of the appellees.

<u>AFFIRMED</u>

9