Paul C. GBENOBA Plaintiff,

v.

MONTGOMERY COUNTY DEPART-
MENT OF HEALTH AND HU-
MAN SERVICES Defendant.

No. CIV.S–00–3163.

United States District Court,
D. Maryland.

July 23, 2002.

Robert Joel Zakroff, Zakroff & Associates, Jonathan Charles Silverman, Zakroff and Assoc PC, Mark David Meyer, Zakroff and Associates PC, Bethesda, MD, for Plaintiff.

Joanne G. Evans, Law Office, Rockville, MD, Joann Robertson, Charles W. Thompson, Jr., Office of the County Attorney for Montgomery County MD, Rockville, MD, Heather Ann Mulloy, Office of the County Attorney for Montgomery County MD, Rockville, MD, for Defendant.

*MEMORANDUM OPINION*

SMALKIN, Chief Judge.

This is an employment discrimination case in which the plaintiff, an African–American and Nigerian-born male, alleges that the defendant denied him numerous promotions and equal pay based on his race and national origin.[1] The case is

---

**1.** On May 30, 2002, the plaintiff moved for leave to file an amended complaint, which

brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983. The case is now before the Court on the defendant's motion for summary judgment on all counts. No oral argument is necessary. Local Rule 105.6 (D.Md.2002). For the reasons set forth below, by separate order, the Court will GRANT the defendant's motion for summary judgment.

## I. *Background*

The plaintiff, Paul Gbenoba, is an African–American male of Nigerian descent. In January 1997, the defendant, the Montgomery County Department of Health and Human Services (HHS), hired the plaintiff as an income services specialist. Mr. Gbenoba's starting salary was slightly over $25,000. Throughout his employment, Mr. Gbenoba was given cost-of-living and salary increases. His current salary is $35,000.

Prior to working at HHS, the plaintiff was employed from 1993 to 1997 as a social service case manager at the Department of Human Services in Washington, D.C. In 1991, Mr. Gbenoba graduated from the University of Maryland with a bachelor's degree in Health Services Management, and he later obtained a master's degree in Health Care Administration from the same institution.

Between 1997 and 1999, the plaintiff applied for several promotions at HHS, but was selected for none of them. None of the successful candidates for those available positions was a Nigerian-born, African–American man. Mr. Gbenoba asserts that he was qualified for each promotion, but was denied advancement because of his race and national origin. Also, Mr. Gbenoba argues that he was paid less than other HHS employees with the same experience, grade, title, education and training who were of a different race or national origin. The plaintiff does not identify any individual earning a higher salary, but he provides the testimony of four employees who attended a September 1999 HHS meeting. At that meeting, the plaintiff maintains, Judy Unger, Senior Human Resource Specialist for the defendant, stated, "white employees of similar grade and title were paid higher and better salaries than their minority counterparts because when hired, they requested and negotiated higher salaries, whereas their minority counterparts never did." The plaintiff also alleges that, at the same meeting, Corrine Stevens, Chief of Crisis, Victim and Income Services for HHS, stated that she had "authorized numerous higher than base salaries for white employees only, usually after being asked to do so by the Personnel Manager."

Mr. Gbenoba filed an administrative complaint in December of 1999.[2] After ex-

---

would indicate, more explicitly, that the plaintiff has alleged discrimination on the basis of race and national origin in violation of Title VII and § 1983. Because such an amendment would make no difference to the outcome of this case, the Court will consider the plaintiff's claims as altered by the amended complaint.

**2.** The defendant argues that plaintiff's claims are limited to those allegedly discriminatory acts which occurred no earlier than March 1999, which is 300 days before the date upon which he filed his administrative complaint. Thus, there is some question as to whether some of the plaintiff's failure-to-promote

claims are timely. The plaintiff's complaint, however, seems to allege a continuing policy and practice of discrimination against persons within his protected group and at least one actual violation of Title VII within the statutory period. This arguably would revive those pre-March 1999 denials as actionable under the "continuing violation" doctrine. *See Nealon v. Stone*, 958 F.2d 584, 592 (4th Cir.1992); *Taylor v. Home Ins. Co.*, 777 F.2d 849, 856–57 (4th Cir.1985); *Woodard v. Lehman*, 717 F.2d 909, 914–17 (4th Cir.1983). Without explicitly ruling on the viability of these claims, the Court will consider and dispose of them for the sake of deciding all potentially actionable claims at once.

hausting his administrative remedies, the plaintiff filed this lawsuit in October 2000, alleging that the defendant failed to promote him, and paid him a lower salary, due to his race and national origin.

## II. *Analysis*

### A. The Standard for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252, 106 S.Ct. 2505. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but the opponent must bring forth evidence upon which a reasonable fact finder could rely, *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

### B. The Plaintiff's Title VII and Section 1983 Claims

The plaintiff alleges race and national origin discrimination in violation of Title VII and 42 U.S.C. § 1983, both of which are properly analyzed under the now-familiar *McDonnell Douglas* burden-shifting scheme. *Gairola v. Va. Dept. of Gen. Serv.,* 753 F.2d 1281, 1285 (4th Cir.1985) ("Under Title VII and either § 1981 or § 1983, the elements of the required *prima facie* case are the same."); *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under the *McDonnell Douglas* scheme, the plaintiff must establish a *prima facie* case of discrimination, at which point the burden shifts to the defendant to offer a legitimate, non-discriminatory explanation for the adverse employment action. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097. If the employer does so, the ultimate burden falls on the plaintiff to establish " 'that the legitimate reasons offered by the defendant were not its reasons, but were a pretext for discrimination.' " *Id.* (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089).

#### 1. Failure to Promote

■ In applying this scheme specifically to failure-to-promote claims, to establish a *prima facie* case of discrimination, the plaintiff must prove: (1) that he is a member of a protected group; (2) that he applied for the positions in question; (3) that he was qualified for each position; and (4) that he was rejected for each position under circumstances giving rise to an inference of unlawful discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Carter v. Ball,* 33 F.3d 450, 458 (4th

Cir.1994). To establish a *prima facie* case is not a difficult task. *See Burdine*, 450 U.S. at 253, 101 S.Ct. 1089 ("[T]he burden of establishing a *prima facie* case of disparate treatment is not onerous."); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir.1996) (characterizing the plaintiff's burden of establishing a *prima facie* case of discriminatory failure to promote as "a relatively easy test").

■ The plaintiff has established a *prima facie* case of discrimination with respect to ten of the eleven promotional opportunities about which he complains. Clearly, in all instances, Mr. Gbenoba, as a Nigerian-born citizen, and as an African–American, was a member of a protected group. It is undisputed that Mr. Gbenoba applied for several job vacancies. As to the applications which the defendant disputes, the plaintiff has offered either sworn testimony or a signed application indicating that he applied for that position. As to the third element of the *prima facie* case, the defendant does not contest the plaintiff's general job qualifications.[3] Finally, to establish "circumstances giving rise to an inference of unlawful discrimination," the plaintiff need only offer evidence that each open position was ultimately filled by a person outside of his protected group, which the plaintiff has done in each case. *See Carter*, 33 F.3d at 458.

■ Mr. Gbenoba meets the criteria for a *prima facie* case as to all of the named promotional opportunities except one, Announcement No. 0151801E (Administrative Specialist II), a part-time position which the defendant mistakenly advertised as a full-time position. The plaintiff filed an application for the full-time position, which, in actuality, did not exist. Under such circumstances, the plaintiff clearly cannot establish that he applied for an open position, and therefore he has failed to establish a *prima facie* case.

■ As for the remaining claims, the plaintiff cannot survive summary judgment (nor could he have survived summary judgment as to Announcement No. 0151801E had he been able to establish a *prima facie* case). When the plaintiff establishes a *prima facie* case of discrimination, the employer must offer a legitimate, non-discriminatory reason for failing to promote the plaintiff. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817. If the defendant satisfies this burden, the presumption of discrimination raised by the *prima facie* case "drops out of the picture," and the plaintiff is left with the ultimate burden of proving that the defendant's explanation is a mere pretext for discrimination. *See Reeves*, 530 U.S. at 143, 120 S.Ct. 2097. In many cases, such as the one now before the Court, the employer asserts that the successful candidate was hired because he possessed qualifications superior to those of the plaintiff. *See Evans*, 80 F.3d at 960 (citing *Burdine*, 450 U.S. at 258–59, 101 S.Ct. 1089).

■ The Supreme Court's decision in *Reeves* makes it clear that evidence of

---

**3.** Evidence in the record shows that, during the selection process, the defendant classified the plaintiff as "qualified" for four of the eleven jobs. Moreover, the defendant's motion for summary judgment concedes: "No one is disputing Mr. Gbenoba's general experience and overall qualifications." The plaintiff, however, has offered no evidence of the actual qualifications demanded by each open position. Thus, while the Court will consider the third element conceded and/or proved under the relaxed burden that a Title VII plaintiff enjoys at the *prima facie* stage, the plaintiff's failure to offer any evidence of each job's criteria will be problematic in light of the plaintiff's ultimate burden of proving discrimination, which, in a case such as this, demands that the plaintiff offer proof that he was better qualified for each individual position than the successful applicant. *See infra*, pp. 12–13.

pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff; "[i]t is not enough ... to *dis* believe the employer; the factfinder must [also] *believe* the plaintiff's explanation of intentional discrimination." *Reeves,* 530 U.S. at 147, 120 S.Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)) (internal quotation marks omitted). However, in appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097.

An employer's explanation can be "false" in either of two ways, and a plaintiff may establish falsity in either sense to prove discrimination. First, an employee can offer evidence that the facts supporting the defendant's articulated reason are untrue, *e.g.,* that the plaintiff was, in fact, more qualified than the successful candidate. *See, e.g., Vaughan v. Metrahealth Cos., Inc.,* 145 F.3d 197, 202–03 (4th Cir.1998); *Evans,* 80 F.3d at 960; *Gairola,* 753 F.2d at 1286–87. Call this "Type 1 Falsity." Second, an employee can establish that the defendant's proffered reason, although factually supported, was not the actual reason for its decision, *e.g.,* the plaintiff was denied a promotion based on his race, and the fact that he was not as qualified as the successful candidate arises as a *post hoc* rationalization for the decision. Call this "Type 2 Falsity." The Fourth Circuit has recently acknowledged these two ways in which an employer's asserted reason can be false. *See Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 648 n. 4 (4th Cir.2002).

The Fourth Circuit's opinion in *Evans* is often interpreted as requiring a plaintiff to show that he is the better qualified candidate in *all* failure-to-promote cases. *See*

*Evans,* 80 F.3d at 960 ("In a failure to promote case, the plaintiff must establish that she was the better qualified candidate for the position sought."). Under such a reading of *Evans,* the law would limit Title VII plaintiffs to proving pretext through evidence of "Type 1 Falsity." This, apparently, is the reading that the *Dennis* court has applied in footnote 4 of that opinion. *See Dennis, supra,* at 248 n. 4. Applying this reading, the *Dennis* court implies that, following the Supreme Court's holding in *Reeves, Evans* can no longer be good law, because the "extra" requirement of proving superior qualifications is inconsistent with the *Reeves* Court's instructions that a plaintiff, in some cases, need only prove "falsity." *See id.*

*Evans,* however, when restricted to its facts, does not run afoul of the *Reeves* Court's instructions. In *Evans,* the plaintiff alleged discriminatory failure to promote, but offered very little direct or indirect evidence of discrimination. *See Evans,* 80 F.3d at 959. After the plaintiff made out her *prima facie* case, the defendant asserted "relative qualifications" as the legitimate reason for failing to promote her. *See id.* at 960. The plaintiff's *only* credible argument to carry her final burden was that she was more qualified than the successful candidate. *See id.* at 960. Thus, her only attempt to establish pretext was based on proof of "Type 1 Falsity." She offered no evidence of "Type 2 Falsity," *i.e.,* that relative qualifications were simply a *post hoc* rationalization for the decision. The court therefore held that she had failed to demonstrate a genuine issue for trial. *Id.* at 960–61.

Thus, restricted to its facts, *Evans* stands only for the proposition that when a defendant has asserted "relative qualifications" as the reason for its decision, and the plaintiff has no evidence to establish

falsity other than her own qualifications, the plaintiff must show that she was better qualified. Indeed, *Evans* (and *Vaughan* and *Gairola*, both of which follow the same "better qualified" principle) alludes to the plaintiff's ability to prevail if she offers some other evidence of pretext/falsity. *Evans*, 80 F.3d at 960 (providing that an employer may choose from equally qualified candidates " '*provided the decision is not based upon unlawful criteria* ' ") (emphasis added) (quoting *Wileman v. Frank*, 979 F.2d 30, 38 (4th Cir.1992)); *id.* (holding that the plaintiff failed to withstand summary judgment because "[s]he has failed to show that she was more qualified for the promotion than the man selected *OR* that, as between her sex and [the employer's] explanation, her sex was the more likely reason for her failure to be promoted" (emphasis added)); *see also Vaughan*, 145 F.3d at 203 (finding that the plaintiff had failed to establish pretext because she "failed *either* to dispute that [the successful candidate] had [the proper] qualifications *or to create any doubt that [her employer] actually took them, and not the candidates' ages, into account in selecting [the successful candidate]* "); *Gairola*, (acknowledging that the plaintiff's "sole evidence" of pretext was a comparison of relative qualifications, finding that the plaintiff had not established superior qualifications, but still considering other possible evidence of pretext, such as a stray comment by a co-worker and the employee's sworn testimony of racial animus).

■ This Court, therefore, is not in the position to acknowledge that either *Dennis* or *Reeves* amounts to a repudiation of *Evans*. Even if *Evans* were inconsistent with *Reeves*, a panel of the Fourth Circuit cannot overrule the decision of another panel; only the *en banc* court can do so. *Bell v. Jarvis*, 236 F.3d 149, 159 (4th Cir. 2000); *Jones v. Angelone*, 94 F.3d 900, 905 (4th Cir.1996). Moreover, this Court can-

not overlook the concerns raised by Judge Williams in her partial dissent in *Dennis*. As Judge Williams pointed out, the majority in *Dennis*, while seemingly suggesting that *Reeves* overruled *Evans*, failed to consider adequately the nature of the *Reeves* holding and did not reconcile its opinion with cases in other circuits, which have held, post-Reeves, that an employee must prove superior qualifications at the pretext stage. *See Dennis*, 290 F.3d 639, 657 n. 3 (citing *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1254 (11th Cir.2000); *Deines v. Tex. Dep't of Protective & Reg. Servs.*, 164 F.3d 277, 280–81 (5th Cir.1999)).

Regardless, no possible resolution of *Evans*, *Dennis*, and *Reeves* could be helpful to the plaintiff in this case. Even if this Court were to recognize *Evans* as entirely abrogated by *Reeves* (through *Dennis* ), the plaintiff still has failed to demonstrate a genuine issue for trial. At the very least, *Reeves* (and *Evans*, for that matter) demands that the plaintiff prove falsity in some way. Here, the plaintiff's only evidence of pretext is found in his unsupported and self-serving assertions of superior qualifications, which simply cannot generate a triable issue. *See Evans*, 80 F.3d at 960 (citing *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988)). Furthermore, the plaintiff has offered no admissible evidence as to what the criteria were for each of the open positions. As to each promotion, the plaintiff simply describes his education and experience, and compares them with those of the successful candidate, but he identifies no objective criteria against which to judge his qualifications; he offers no evidence that his education and experience were particularly suited to any of these individual positions. *See Vaughan*, 145 F.3d at 202 ("Standing alone, self-serving claims of superiority do not suffice."). "The element of qualification contains two components: the qualifications

demanded by the job and the qualifications possessed by the plaintiff. Before the second component can have any relevance, the first component must be established. And because at this stage the entire burden is on the plaintiff, it follows that the plaintiff must begin by demonstrating what the qualifications for the job were. This requirement may seem harsh, but it is logically inescapable." 1 LEX K. LARSON, EMPLOYMENT DISCRIMINATION § 8.02[3] (2002). Thus, with no showing of superior qualifications, and with no other evidence indicating that the defendant's proffered explanation is false, the plaintiff could not possibly carry his ultimate burden of persuasion. *See Reeves,* 530 U.S. at 148, 120 S.Ct. 2097. Therefore, this Court finds that the plaintiff has failed to establish a genuine issue as to whether HHS discriminated against him in connection with any of the promotional opportunities described in the complaint.

### 2. Unequal Compensation

 The plaintiff's complaint also alleges that the defendant violated Title VII and Section 1983 by paying him an unequal amount based on his race and national origin. This allegation is wholly lacking in proof. To establish a *prima facie* case of discriminatory compensation under Title VII, the plaintiff must show: (1) that he is a member of a protected class; (2) that he was paid less than a non-minority employee; and (3) that the higher paid employee was performing a job substantially similar to the plaintiff's. *See Brinkley–Obu v. Hughes Training, Inc.,* 36 F.3d 336, 343 (4th Cir.1994). As evidence of unequal pay, Mr. Gbenoba offers only a statement made by employees of the defendant at a September 1999 meeting. According to the plaintiff, and the affidavits of other employees of HHS, Judy Unger, an HHS employee, stated that "white employees of similar grade and title were paid higher and better salaries

than their minority counterparts because when hired, they requested and negotiated higher salaries, whereas their minority counterparts never did." The plaintiff also offers evidence that another employee stated that she had "authorized numerous higher than base salaries for white employees only, usually after being asked to do so by the Personnel Manager." The plaintiff, however, has offered absolutely no evidence of any particular individual who, at any particular time, was in a similar position to plaintiff's, but was paid more. He points only to the broad, non-specific statements mentioned above and the bare allegations of his complaint, which clearly cannot withstand summary judgment without supporting proof. Furthermore, the plaintiff has not demonstrated the criteria necessary to make these statements admissible against his employer under FED. R. EVID. 801(d)(2). Only admissible evidence can be considered in opposition to summary judgment. FED. R. CIV. P. 56(e). On the evidence in this record, as a matter of law, plaintiff cannot prevail.

### C. Leave to Amend the Complaint

Throughout this case, the defendant has argued that the plaintiff's complaint failed to plead discrimination based on national origin, and instead only alleged racial discrimination. In response, the plaintiff has moved for leave to file an amended complaint to include national origin as a motivating factor for the defendant's conduct. The above opinion considers the plaintiff's national origin claims as having been properly pled, and the result of this case and the above analysis in no way depends on whether the claim was brought as one of race or national origin discrimination. For these reasons, the plaintiff's motion for leave to file an amended complaint will be denied as moot.

### III. *Conclusion*

For the foregoing reasons, a separate order will be issued, GRANTING the defendant's motion for summary judgment, entering judgment in its favor, and DENYING AS MOOT the plaintiff's motion for leave to file an amended complaint.

### *ORDER AND JUDGMENT*

For the reasons set forth in the Memorandum Opinion of even date, it is, this 23 day of July 2002, hereby ORDERED and ADJUDGED:

1. That the Defendant's motion for summary judgment BE, and it hereby IS, GRANTED;

2. That the Plaintiff's motion for leave to file an amended complaint is DENIED AS MOOT;

3. That judgment BE, and it hereby IS, ENTERED in favor of the Defendant, against the plaintiff with costs; and

4. That the Clerk of the Court send copies of this Order and Judgment and the foregoing Memorandum Opinion to counsel for the parties.